OPINION
This is an expedited appeal by Defendant-Appellant Jason Stovall, acting pro se, from the Common Pleas Court of Miami County, Juvenile Division's adjudication of him as a delinquent child in violation of R.C. §§ 2911.12 and 2913.02. Stovall advances three assignments of error. First, he claims he has been subjected to double jeopardy in violation of the Fifth Amendment to the United States Constitution. Next, he contends his rights under the United States and Ohio Constitutions were violated when he was tried without counsel. Finally, Stovall claims he has been erroneously sentenced to incarceration in the Miami County Jail as an adult instead of being placed in a juvenile facility.
In April of 1998, a complaint was filed in the Common Pleas Court of Miami County, Juvenile Division, seeking an adjudication of Stovall as a delinquent child on grounds that he had committed acts on December 12, 1997, that would constitute burglary and theft in violation of R.C. §§ 2911.12 and 2913.02, respectively, if he were an adult. On the date of the offenses, Stovall was seventeen years old. Due to the unavailability of certain essential witnesses, the prosecutor eventually requested dismissal of the complaint without prejudice. On October 27, 1998, that request was granted by the juvenile division.
After Stovall's eighteenth birthday, the prosecutor filed a second complaint which, like the first, alleged Stovall was a delinquent child on account of his participation in the aforementioned offenses. The January 6, 1999, summons and notice of hearing sent to Stovall ordered him to appear on January 15, 1999, and advised him of his right to counsel and of his right to representation by the public defender's office, should he be found to be indigent. Stovall appeared in court with his parents on January 15, but he was not represented by counsel. The case was continued to January 29 to allow Stovall time to obtain representation, and referral was made to the public defender's office.
At trial, however, Stovall remained unrepresented by counsel. The court asked the prosecution if it was ready to proceed, but did not address a similar question to Stovall. Nevertheless, the trial went forward without objection by Stovall.
After all witness testimony had been completed, Stovall objected to the fact that he was not asked if he was ready to proceed at the outset and his having to go forward without representation. Stovall's parents explained to the court that they had attempted to secure representation for their son, both through the public defender's office and a private attorney, but to no avail. They claimed to have been denied representation by the public defender's office, and stated they were unable to pay the retainer the private attorney required before trial.
The court responded that Stovall had had over one year to prepare for trial and denied Stovall's request for a continuance, stating it would have done so even if the request had been made prior to trial. After a short recess, the court found the State had proven beyond a reasonable doubt that Stovall had participated in the burglary and theft, sentenced him to a total of 120 days in the Miami County Jail, and ordered him to pay restitution. Stovall's timely appeal followed. We address each of Stovall's assigned errors, noted above, in order.
 I.
The trial court erred when the judge reopened the dismissed case against Jason Stoval [sic] in juvenile court after he had become 18 years old. (Double jeopardy)
In his first assignment of error, Stovall argues that the prosecutor's filing of the second complaint after dismissal of the first constitutes double jeopardy. It is well established, however, that a juvenile is not placed in jeopardy until the trier of fact begins to hear evidence. Breed v. Jones (1975),421 U.S. 519, 531. Nothing in the record indicates the juvenile division ever began to hear evidence pursuant to the first complaint filed by the prosecutor, and Stovall does not suggest as much. His first assignment of error is, therefore, meritless. It is accordingly overruled.
 II.
The trial court erred when it retried Janson [sic] Stovall without an attorney (constitutional violation under 5th, 6th, 13th, and 14th Amendment [sic] and comparative Ohio constitutional articles and sections under table of authorities and Articles [sic] XV, Section 7 and Article XVI, Section 3.23 and O.R.C. 2921.45(A)[).]
In his second assignment of error, Stovall claims his constitutional right to an attorney was violated when the juvenile court denied his request for a continuance at the conclusion of testimony at trial. He argues that the public defender's office refused to represent him on grounds that he did not qualify for its services, and that after consulting a private attorney, his parents were told they would need to pay a $1,500 retainer before trial, which they were unable to do. Under these circumstances, Stovall argues, his adjudication as a delinquent child should be reversed since he was without representation at trial and had never affirmatively waived his right to counsel.
Juv.R. 4(A) and 29(B), as well as R.C. § 2151.352, entitle a juvenile to be represented by counsel at all stages of juvenile court proceedings. In addition, indigent parties, whether they be a child, parent, custodian, or other person in loco parentis, are entitled to appointed counsel. Juv.R. 4(A). There is no material difference with respect to the constitutional right to counsel between adult and juvenile proceedings. In re Gault (1967),387 U.S. 1, 36. Thus, a juvenile's waiver of his right to counsel must be voluntary, knowing, and intelligent. State v. Gibson (1976),45 Ohio St.2d 366, 377-78. Furthermore, the court must fully and clearly explain to the defendant his right to counsel, who must then affirmatively waive that right on the record. State v.Roseman (1981), 3 Ohio App.3d 272, 273. If a party appears without counsel, R.C. § 2151.352 specifically requires the juvenile court to "ascertain whether he knows of his right to counsel," and Juv.R. 29(A) mandates that the court do so at the beginning of the adjudicatory hearing.
Here, the record shows that on January 15, 1999, when Stovall's trial was originally scheduled, the juvenile court granted a continuance until January 29, 1999, so that Stovall could obtain counsel, whether through the public defender's office or a private attorney. The juvenile court also referred the case to the public defender's office for an indigency determination and possible representation. Stovall remained without representation on the date of trial, however, and participated fully in the proceeding without objection until after the taking of testimony had been concluded. At that time, he explained to the court that the public defender's office had denied his and his parents' request for representation "because of our income." Stovall's father also explained that he and his wife had tried to hire a private attorney, but they were unable to come up with the required $1,500 retainer. Although the private attorney subsequently agreed to a $500 retainer and to a weekly payment schedule to make up the difference, the Stovalls claimed they had no resources from which to obtain the $500 prior to trial. Stovall's father stated that other household bills, medical bills, and the younger Stovall's unemployment were all factors in the family's inability to secure counsel. The younger Stovall also told the court that " I couldn't retrieve what I needed" to pay the private attorney until February 10.
The juvenile court stated that it had no control over the determination that the Stovalls were not qualified for representation by the public defender's office. Furthermore, the court observed that Stovall had had over one year to become employed and save money for his attorney's fees, and that it would have denied Stovall a continuance even if it had been requested at the beginning of the proceedings.
The record contains no indication that Stovall was ever advised of his right to counsel, nor does it establish that Stovall affirmatively waived his right to counsel. The transcript from Stovall's initial hearing on January 15, 1999, does not appear in the record, although the State has appended what appears to be an unstamped copy of that transcript to its appellate brief. Since the transcript has not been made a part of the record, however, it may not be considered on appeal. App.R. 9(A). Consequently, we are left with a record devoid of any evidence that Stovall was ever advised of his rights, or that he ever knowingly, intelligently, and voluntarily waived that right.
In State v. Dyer (1996), 117 Ohio App.3d 92, the defendant had expressed a desire to represent himself in a motion to dismiss, and the record of the proceedings at the trial level was unintelligible. We were unable to determine whether the defendant was advised of his rights and knowingly, voluntarily, and intelligently waived his right to representation in open court, and stated as follows:
 Generally, the appellant may not prevail on an appeal if there is no transcript of the proceedings and the error cannot be shown in the record. This is because courts are to presume that the proceedings in the lower court were correct. However, in the case of a waiver of a fundamental constitutional right, the waiver, as previously mentioned, must affirmatively appear in the record. Therefore, because there is no transcript of the proceedings in this case, we must presume that Dyer's right to representation was never properly waived. (Cites omitted.)
Dyer, supra at 96. The same is true in the present case.
We are not incognizant, however, of the potential for a wily defendant to put off his trial for a seemingly indefinite period of time by intentionally failing to retain counsel and at the same time refusing to affirmatively waive his right to counsel on the record. While we acknowledge that there must be some outer limit of reasonablility in this regard, this case does not require us to resolve precisely, or even approximately, where that limit might lie. Stovall and his parents made diligent efforts to secure counsel prior to trial, and he was granted only one continuance to allow him time to do so. These facts indicate that Stovall was not attempting to inject undue delay into the proceedings, and that an additional continuance to provide him more time to secure representation would not have been unreasonable. Thus, the question of just how long a defendant may delay his trial by manipulative exercise of his right to counsel remains for another day.
We conclude that the juvenile court erred in compelling Stovall to proceed without representation at trial because no affirmative waiver of his right to counsel appears on the record. Accordingly, Stovall's second assignment of error is sustained.
 III. The trial court erred when it incarcerated Jason Stoval [sic] in the Miami County Jail for adults in violation of O.R.C. 2151.355(A), O.R.C. 2151.355(A)(11), O.R.C. 2151.011(B)(6)(b), and O.R.C. 2151.352[.]
In his third assignment of error, Stovall contends he was improperly sentenced to serve his term of incarceration in the Miami County Jail instead of an appropriate juvenile facility. The prosecutor offers no argument in opposition to Stovall's contention.
Our resolution of Stovall's second assignment makes it unnecessary for us to address this assignment. As guidance to the juvenile court on remand, however, we note that R.C. § 2151.011(B)(6)(b) provides that "any person who violates a federal or state law or municipal ordinance prior to attaining eighteen years of age shall be deemed a `child' irrespective of that person's age at the time the complaint is filed or the hearing on the complaint is held." It is undisputed that Stovall falls within this definition. R.C. § 2151.355 sets forth the dispositions available to a juvenile court after a finding that a child is a delinquent child. We note that the various specific options in R.C. 2151.355 do not include incarceration in a jail for adult offenders. In fact, the provision relied upon by Stovall, while it arguably provides the court with additional discretion in making a disposition, expressly prohibits incarceration of a delinquent child in an adult facility. It reads in pertinent part as follows:
 If a child is adjudicated a delinquent child, the court may * * * [m]ake any further disposition that the court finds proper, except that the child shall not be placed in any state correctional institution, county, multicounty, or municipal jail or workhouse, or other place in which an adult convicted of a crime, under arrest, or charged with a crime is held.
R.C. § 2151.355(A)(22), formerly R.C. § 2151.355(A)(11). This provision is clear on its face and prohibits incarceration of a delinquent juvenile in a county jail that houses adult offenders.In re Campbell (June 27, 1997), Lake App. No. 96-L-133, unreported (construing the former R.C. § 2151.355(A)(11)). Thus, were it necessary for us to consider Stovall's third assignment of error, we would conclude that Stovall was improperly sentenced to incarceration in the Miami County Jail.
Having overruled Stovall's first assignment of error, and having sustained his second which makes it unnecessary to address his third, the juvenile court's judgment of February 4, 1999 is reversed, and this cause is remanded for further proceedings consistent with this opinion.
GRADY, P.J., and WOLFF, J., concur.
Copies mailed to:
Anthony E. Kendell
Jason Stovall
Hon. Lynnitta K. C. Wagner