JOURNAL ENTRY AND OPINION
Defendant-appellant Robert Melton ("appellant") appeals from his conviction of robbery (R.C. 2911.02 (A)(3)) entered in Cuyahoga County Common Pleas Court upon a jury verdict. For the reasons stated below, we reverse appellant's conviction and remand.
The record demonstrates that the RTA police arrested appellant on July 5, 1998. On September 9, 1998, the Cuyahoga County Grand Jury returned an indictment which charged appellant with one count of robbery in violation of R.C. 2911.02 (A)(3), stemming from the events which occurred on July 5 at approximately 11:43 p.m. at the East 79 Street RTA station on train no. 819. The indictment alleged appellant used or attempted to use force against RTA driver Katherine Underwood in attempting to commit a theft offense or in fleeing immediately after the attempt or offense upon her. At his arraignment on September 15, appellant was found to be indigent, counsel was assigned to represent him and he entered a plea of not guilty to the charge against him. Appellant's original bond was continued and he remained in jail awaiting trial which was set to commence on September 30, 1998. Subsequently, trial was continued to October 1 by journal entry which indicated that when the matter was called for trial on September 30, "defendant refuse[d] to come to court." On October 1, appellant's eighty-eighth day of incarceration, the court ordered psychiatric examination pursuant to R.C. 2945, et seq. for determination of appellant's competency to stand trial and his sanity at the time of the act. The court ordered the case stayed and requested notification as soon as the report was complete. On October 8, by motion not reflected in the trial court docket, appellant moved the court to dismiss the charge against him for its failure to bring him to trial within ninety days as required by R.C. 2945.71, et seq.; but, on October 21, the court denied appellant's motion to dismiss the charge. On October 28 and October 29, Robert E. Schweid, Ph.D. of the Cuyahoga County Court Psychiatric Clinic completed appellant's reports as ordered, finding appellant sane at the time of the event and competent to stand trial. On Friday morning, October 30, when his case was called for trial, appellant appeared with his assigned counsel, Mr. Hildebrand, and the prospective jurors were sworn. The court continued appellant's trial to Tuesday, November 3, 1998 and advised the jurors that at trial, appellant's counsel would be Mr. Hildebrand's associate, Mr. Farrell, due to Mr. Hildebrand's conflicting prior commitment. On Friday afternoon, the state filed its Bill of Particulars, its demand for discovery pursuant to Crim.R. 16 and its response to appellant's request for discovery. On Tuesday, November 3, prior to the voir dire of the jurors, appellant advised the court of his intention to represent himself at trial. The trial judge cautioned appellant that self-representation was "a bad idea" and offered him the option of continuance of his trial. Appellant, claiming that he had already waited "one hundred and twenty-one days for this trial" on a matter that "was supposed to be adjudicated in ninety days" chose to proceed pro se. The court advised the jury that appellant had chosen to represent himself and that Mr. Farrell and a second associate counsel would remain available to him for advice. Appellant represented himself during jury selection, opening statements and a portion of cross-examination of the state's first witness, the victim, Katherine Underwood. Mr. Farrell represented appellant during the remainder of the trial.
The state's first witness was Katherine Underwood, a two-year veteran RTA train operator, who testified that at 11:28 p.m. on July 5, 1998, as she prepared her train for the 11:30 p.m. departure from Tower City, appellant boarded the train, used his fare card and asked for help in getting it back. As she reached to open the fare box, appellant stuck his foot into the operator's cab and grabbed at the base of her purse. She grabbed the strap of the purse and called the Tower dispatcher to inform them that "Robert" was on the train. When appellant heard her on the phone, he ran away from the cab toward the middle of the train. She observed that appellant was intoxicated, enraged and aggressive. At the East 55 Street station, appellant opened the cab door and came after her purse again reaching and leaning his upper body into the cab. She stopped the train and shut the cab door. When the train went through the tunnel appellant started aggressively reaching for her purse. At that point, while she had the phone receiver in one hand, appellant started punching her. She advised appellant to stop and told him to get off the train. At first she thought his punches to her arm and shoulder were to intimidate her in an effort to get her to release the phone so she would be unable to call for help, but the six or seven punches he inflicted became increasingly harder. By the third punch, she believed he planned to beat her into submission. She stopped the train and insisted that he get off but he directed her to take him to the East 79 Street stop. She became angry and hit him with the phone receiver. When he stepped into the cab, she was terrorized and pleaded with him to get off, but he struck her in the chest. Tower notified her that police would meet her at the East 79 Street station so she moved the train there. She saw appellant hit the passenger in the arm, who appeared frightened, remained seated and held his arm. When the train arrived at the East 79 street station, appellant left the train but she waited for the RTA police officers who then removed the passenger. One officer remained with her on the train and took her statement as she finished the route. The next day, she made her statement at the prosecutor's office and sought emergency medical care and treatment for injuries to her arm, back and buttocks. As a result of the incident, she missed ten days of work and sought mental health care due to the stress.
The three RTA police officers who were dispatched to the scene testified for the state as follows. Officer Sean O'Neil said that when he arrived at the East 79 Street station, he observed appellant at the bottom of the hill flailing his arms and yelling. Officer O'Neil testified that he went up to see the train operator while his partners tended to appellant. At the train, Officer O'Neil spoke to both the train operator and the passenger. On cross-examination, Officer O'Neil admitted that he was aware of prior calls about appellant harassing RTA train operators while riding the trains.
Officer Bernard Yurgionas, a nine-year veteran of RTA police, was appellant's arresting officer. Officer Yurgionas testified that he is familiar with appellant and has spoken to him "over thousand times." When Officer Yurgionas responded to the call, he saw appellant was intoxicated and agitated, jumping up and down and shouting "the bitch hit me!" When he questioned appellant as to the sequence of events, appellant admitted that Ms. Underwood hit him after he "punched" her. Officer Yurgionas advised appellant of hisMiranda rights and arrested him. On cross-examination, Officer Yurgionas stated that he pursued the investigation to determine whether the driver had assaulted appellant, but appellant admitted that the source of the incident was his punching the operator. Officer Yurgionas conceded that he had no information that appellant was trying to steal the purse.
Officer Arthur Chenevey testified that when he responded to the radio dispatch with his two partners, he observed that appellant was highly agitated, smelled of alcohol and was yelling "I punched her and she was trying to call the police!" He said that appellant was advised of his rights and placed under arrest.
Detective Mooring of the RTA Investigative Unit testified that he was assigned to confer with the prosecutor regarding the robbery charge on July 6. Detective Mooring met with Ms. Underwood, went over her statement with her, typed her statement, asked her additional questions and she signed the statement.
The state played the tape recording of the communication made during the incident between the victim and the RTA Tower dispatcher.
The court called Gerald Howard, who was the sole passenger and witness to the events on the train. He testified that while the train was still at the Tower City station, he was seated about six rows behind the operator's cab and observed the driver board the train and tell appellant, who was at the fare box, to sit down. He saw appellant get up and reach his hand into the cab. He noted that a little struggle ensued with appellant going toward her purse and the driver pushing his hand away. By the time the train was approaching the East 79 Street station, the operator appeared mad, got into appellant's face and hit him with the phone. Appellant approached him, leaned over and asked him whether he saw what the operator did.
The state rested and the defense entered a motion for acquittal pursuant to Crim.R. 29, which was denied by the court. The defense rested and, after closing arguments, the matter was submitted to the jury. On November 6, the jury returned its verdict finding appellant guilty of the charge. The court ordered a presentence investigation report and, on December 4, 1998, sentenced appellant to a two-year term of incarceration with credit for time already served. This appeal follows which presents seven assignments of error for our review.
Assignments of error presented by counsel are as follows:
 I. DEFENDANT WAS DENIED THE FAIR TRIAL GUARANTEED BY THE DUE PROCESS CLAUSE OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND THE TRIAL COURT FAILED TO FOLLOW CRIM.R. 44 (A) AND (C), WHEN THE RECORD FAILED TO SHOW THAT, AFTER BEING FULLY ADVISED OF HIS RIGHTS, DEFENDANT WAIVED COUNSEL VOLUNTARILY, KNOWINGLY, INTELLIGENTLY AND IN WRITING.
 II. FAILURE TO INCLUDE THE WRITTEN INSTRUCTIONS TN THE RECORD AS REQUIRED BY R.C. 2945.10 (G) DEPRIVED MR. GRIDER OF HIS RIGHT TO DUE PROCESS PROVIDED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECT. 16, ART. I OF THE OHIO CONSTITUTION BY IMPAIRING THE EFFECTIVE FIRST APPEAL AS OF RIGHT GUARANTEED BY SECT. 3, ART. IV
OF THE OHIO CONSTITUTION AND IMPLEMENTED BY R.C. 2953.02.
 III. WHEN THE TRIAL COURT INFORMED MR. MELTON ONLY OF THE PRISON TERM, AND THE JOURNAL ENTRY STATED MERELY THAT THE SENTENCE INCLUDES ALL EXTENSIONS PROVIDED BY LAW, THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2929.19, WHICH REQUIRES THAT AT SENTENCING FOR AN OFFENSE THAT OCCURRED ON OR AFTER JULY 1, 1996 THE TRIAL COURT SHALL NOTIFY THE OFFENDER OF SPECIFIC FACTS CONCERNING POST-RELEASE CONTROL (R.C. 2967.28) AND THE POSSIBILITY OF AN INCREASE IN THE PRISON TERM (R.C. 2967.11)
We shall review the assignments of error as advanced by counsel out of their predesignated order. In the second assignment of error advanced by counsel, appellant urges reversal of his conviction and contends that the trial court's failure to include the written jury instruction in the record as required by R.C.2945.10 (G) deprives him of his right to due process by impairing the effective first appeal of his conviction. In the third assignment of error advanced by counsel, appellant urges this court to reverse his sentence and remand the matter for a new sentencing hearing because the trial court failed to comply with the statutory requirements of R.C. 2929.19 (A)(1) and (B)(3) when it failed to inform him that he may be subject to post-release control and subject to sanctions for acts committed while in prison or while subject to post-release control.
The state, both in its brief and at oral argument before this court, has conceded that both appellant's second and third assignments of error have merit.
Accordingly, we find that under the circumstances of the matter sub judice, where the state has conceded that the trial court's failure to include the written jury instruction in the record required by R.C. 2945.10 (G) has deprived appellant of his right to due process by impairing his effective first appeal of this conviction, appellant's second assignment of error is well taken and his conviction must be reversed.
Moreover, the state concedes, and we agree, that the trial court failed to comply with the statutory mandates of R.C. 2929.19
at sentencing. The trial court has a mandatory duty and the court is required at the sentencing hearing to notify the offender that he is subject to "bad time" violations and post-release controls. See State v. Shine (Apr. 29, 1999), Cuyahoga App. No. 74053; Statev. Davis (June 18, 1998), Cuyahoga App. 72820, unreported. Accordingly, we find appellant's third assigned error to be well taken.
Further, in the first assigned error advanced by counsel, appellant claims that his conviction is invalid and he was denied a fair trial when he represented himself without having voluntarily, knowingly and intelligently waived his constitutional right to counsel. Specifically, appellant contends that the court failed to strictly comply with Crim.R. 44 (A), which provides that "counsel shall be assigned * * * [for serious offenses] unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently and voluntarily waives his right to counsel * * *."
It is axiomatic that a criminal defendant has a right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. Moreover, the Sixth Amendment "* * * guarantees that a defendant * * * has an independent constitutional right to self-representation." State v. Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus, citing Faretta v. California (1975),422 U.S. 806. To establish an effective waiver of right to counsel it is necessary that the trial court "make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." Id. at paragraph two of the syllabus. Before concluding there has been a waiver, the court must be satisfied that the defendant made an intelligent and voluntary waiver with the knowledge that he will have to represent himself and that there are dangers in self representation. State v.Ebersole (1995), 107 Ohio App.3d 288, 293.
In Gibson, supra, the Supreme Court of Ohio applied the test set forth in VonMoltke v. Gillies (1948), 332 U.S. 708, to establish the requirements sufficient to satisfy this pretrial inquiry by stating: "[t]o be valid such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." Gibson, supra, 377.
Upon review of the complete record before us, we find that although the trial judge warned appellant of the dangers in self-representation, the inquiry conducted by trial court failed to comport with the accepted standards of laying a foundation to accept appellant's waiver of counsel as set forth in Gibson, supra.
sufficient to ensure appellant had an understanding of the charges against him, the statutory offenses included within them, the allowable range of punishment, his possible defenses, circumstances in mitigation and a broad understanding of the whole matter sufficient to knowingly and intelligently exercise his right to waive counsel. Moreover, the trial court erred in failing to require appellant sign a written waiver of counsel pursuant to Crim. R. 44 (C), which provides "waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall bein writing." (Emphasis added.) There is no dispute that the charge brought in this case was a serious offense for which a written waiver of counsel is required. Thus, the trial court's failure to secure a written waiver in this case constitutes error. Accordingly, we find appellant's first assignment to have merit.
Appellant's assignments of errors are set forth in his PRO SE
BRIEF as follows:
I. INEFFECTIVE ASSISTANCE OF COUNSEL.
 II. THE EVIDENCE WAS INSUFFICIENT TO WARRANT A CONVICTION AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. FAILURE TO BRING DEFENDANT TO TRIAL WITHIN NINETY DAY STATUTORY TIME LIMIT.
IV. DISQUALIFICATION OF JUDGE.
Appellant in his pro se brief urges this court to reverse his conviction, to grant him a new trial and to instruct the trial court to hold disqualification proceedings. Consistent with our determination of the preceding assignments of error, wherein we have reversed appellant's conviction, we need not reach the merits of appellant's assignments of error I-III as advanced pro se. See App.R. 12 (A)(1)(c).
In assignment of error IV, appellant requests this court to instruct the trial court to hold disqualification proceedings. R.C. 2701.03 provides the exclusive means for resolving claims that a common pleas judge is biased. Jones v. Billingham (1995),105 Ohio App.3d 8. The statute permits any party or counsel to file an affidavit with the clerk of the supreme court setting forth the fact of bias, prejudice or disqualification not less than seven days prior to the time set for the hearing in the matter. R.C.2701.03. The chief justice, or any judge of the supreme court designated by him, shall pass upon the disqualification of the judge pursuant to Section 5 (C) of Article IV, Ohio Constitution. Id. The court of appeals is without authority to pass upon disqualification or to void the judgment of the trial court on that basis. State v. Ramos (1993), 88 Ohio App.3d 394. Therefore, because any party or counsel may initiate disqualification proceedings pursuant to the statute, we decline to order such proceedings.
Appellant's conviction is reversed and the matter is remanded for proceedings consistent with this opinion.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. _____________________________ TIMOTHY E. McMONAGLE, JUDGE
DIANE KARPINSKI. P.J. and JAMES D. SWEENEY. J., CONCUR.