OPINION
{¶ 1} C.A.C, a juvenile, appeals both from his adjudication as delinquent, and from his subsequent classification as a sexual predator. He contends that he was not represented by counsel in either proceeding, and that the record does not support a finding that he knowingly and voluntarily waived his right to counsel in either proceeding. Specifically, he contends that he was never clearly informed that he had a right to counsel in connection with his decision whether to admit or deny the allegation of delinquency, and that he never waived that right. We agree. Further, he contends that although his mother, who was present at the sexual offender classification hearing, purported to waive his right to counsel at that hearing, he was never asked whether he was willing to waive his right to counsel, and he never indicated that he was willing to waive that right. We find that the record supports this contention.
 {¶ 2} C.A.C. also argues that the trial court was without authority to classify him as a sexual predator, because the offense he allegedly committed — misdemeanor sexual imposition — was not deemed to be a sexually oriented offense, subjecting the offender to classification, either at the time he allegedly committed the offense or at the time he was adjudicated delinquent, but was only added by the General Assembly to the list of offenses constituting a sexually oriented offense after his adjudication, but before his classification. The State contends that the inclusion of misdemeanor sexual imposition to the list of sexually oriented offenses was intended by the General Assembly to have retroactive effect.
 {¶ 3} Because we agree with C.A.C. that the record does not reflect that he knowingly and voluntarily waived his right to counsel in connection with his adjudication of delinquency, the judgment of the trial court so adjudicating him is Reversed, and this cause is Remanded for further proceedings. We find it premature to determine the issue involving the retroactivity of the addition of misdemeanor sexual imposition to the statutory list of sexually oriented offenses. Neither the State nor C.A.C. was represented by counsel at the sexual offender classification hearing. Although the trial judge brought up the issue, the only advice offered at the hearing was from a probation officer, based on a seminar he had attended. Furthermore, the issue is not well developed in the appellate briefs.
 I {¶ 4} In 2002, C.A.C. was alleged, in a complaint, to have committed an act that, if committed by an adult, would constitute misdemeanor sexual imposition. Specifically, C.A.C., who was then sixteen years old, was accused of having cornered his victim, a female, near her school locker, and having pulled her shirt and bra up and then touching her breast.
 {¶ 5} In his first court appearance on this complaint, C.A.C. was informed by the trial judge:
 {¶ 6} "C____, today I'm not going to arraign you on the charge, but advise you of the charge that has been filed. I'll schedule an arraignment for one day next week so that the State of Ohio has a chance to review the matter. The charge did come in by police officers and with questions as to whether you should be charged with this, or nothing at all. So I'm going to today merely advise you of what has been filed and give you the opportunity to discuss with your family or with a lawyer, okay?"
 {¶ 7} The court then discussed the nature of the charge and resumed as follows:
 {¶ 8} "* * * I will not ask you to answer the charge today. I'm going to let the prosecutor review the matter and today make sure that you know that you have the right to have a lawyer help you or represent you. You and your family have the right to retain or hire a lawyer if you choose to do that. If you'd like to but can't afford it, we'll appoint a lawyer for you.
 {¶ 9} "Ultimately, when the charge is before the court * * * ultimately, when I do advise you of the charge against you, then at that time you can admit I committed that offense, or I deny [sic] I committed that offense. Right now I'm not asking you to do that."
 {¶ 10} Shortly after this, the trial court asked if C.A.C. had any questions. His only question was whether he would be going home. The answer was no.
 {¶ 11} C.A.C.'s mother was present at this hearing, but C.A.C. was not represented by counsel. He neither asserted, nor waived, his right to counsel at this hearing.
 {¶ 12} The next hearing was five days later. It was before a magistrate, with C.A.C. and his mother both being present. This hearing was intended as an arraignment, but the prosecutor was not present, and there was still some confusion as to the position of the State, so the magistrate continued the arraignment. Before she did so, she gave what appears to have been a standard recitation of rights:
 {¶ 13} "Good afternoon. These are arraignment hearings. The purpose of an arraignment hearing is to inform you of your charge and also your rights. As to your rights, you have the right to remain silent as to any charge that's been filed against you. This means if anybody asks any questions concerning your offense prior to your adjudication, you do not have to answer those questions if you don't wish. You have the right to be represented by a lawyer. If you cannot afford a lawyer, we would appoint you one at no cost to you."
 {¶ 14} The magistrate then explained the right to a trial, the burden of proof, the presumption of innocence, the right to confront witnesses, the right to call witnesses and to secure their attendance, and the privilege against self-incrimination. The magistrate then continued as follows:
 {¶ 15} "* * * You may either admit or deny the charge. If you admit, you give up your right to trial, you give up your right to have an attorney represent you at that trial; the case would proceed to disposition. If you deny the matter it would be set for pre-trial conference. This is an informal meeting between yourself and the State of Ohio, represented by an assistant prosecutor. It has to include your parent or guardian, yourself and your attorney, if you choose to exercise that right. The purpose of the pre-trial is to try to work the matter out without a trial. If you cannot work out the matter at the pre-trial conference, then it is set for trial."
 {¶ 16} The magistrate next discussed the disposition, after trial. She then ascertained from C.A.C. an acknowledgment that he understood his rights. C.A.C. neither asserted, nor waived, his right to counsel.
 {¶ 17} This arraignment hearing was then continued. It resumed a week later. C.A.C.'s mother was present, but not C.A.C., himself. The magistrate recited the juvenile's rights, in a statement that was identical, verbatim, to the statement recited at the prior arraignment.[1] In the absence of C.A.C., a recess was taken to obtain his attendance. In the event, however, the hearing did not resume until two days later, on September 20, 2002.
 {¶ 18} The September 20, 2002 hearing was the hearing at which C.A.C. admitted the allegation. C.A.C. and his mother were present. The magistrate recited the nature of the charge, including the specific factual allegation, and obtained C.A.C.'s acknowledgment that he understood the charge, but did not discuss C.A.C.'s right to counsel until after eliciting his admission:
 {¶ 19} "THE COURT: Do you wish to admit or deny that charge?
 {¶ 20} "THE YOUTH: Admit.
 {¶ 21} "THE COURT: Do you understand that by admitting you give up your right to trial? You give up your right to have an attorney represent you at that trial?
 {¶ 22} "THE YOUTH: Yes, ma'am.
 {¶ 23} "THE COURT: All right. Is anybody making you admit to this or promising you anything?
 {¶ 24} "THE YOUTH: No.
 {¶ 25} "THE COURT: I will accept your admission."
 {¶ 26} Whereupon, the magistrate set a date for disposition.
 {¶ 27} At the September 20, 2002 hearing, at which C.A.C. admitted the allegation of delinquency, he neither asserted, nor waived, his right to counsel. At this hearing, no suggestion was made that he had the right to counsel to advise him in connection with his decision whether to admit or deny the allegation — only that he had a right to counsel at trial, which he would be giving up, along with the right to a trial, by admitting the allegation.
 {¶ 28} The disposition hearing, two months later, on November 13, 2002, was presided over by the juvenile judge. C.A.C. and his mother were present. The subject of counsel, or C.A.C.'s right to counsel, was not discussed at this hearing. What was discussed was C.A.C.'s inability to control his sexual impulses, in fact, his boastfulness concerning that inability. C.A.C., who was uncounseled, admitted that he was not doing well. The disposition was as follows:
 {¶ 29} "It's the disposition of the Court to continue the youth on indefinite probation; to require that he continue to follow the rules of his placement; that he begin and follow the rules of his placement and complete the program at Osterlen Services For Youth; impose a fine of $50 and costs; require that he complete 50 hours of community service.
 {¶ 30} "I will review the matter on a monthly basis for the next three months to see if the psychological intervention, the Osterlen Services are making a dent. If we see no progress whatsoever in 90 days, then I may find another place for C____ to live that's even more confining. I will suspend 90 days in the detention center."
 {¶ 31} C.A.C. neither asserted, nor waived, his right to counsel at the disposition hearing.
 {¶ 32} In May, 2004, a year and a half later, the trial court held a classification hearing, at the conclusion of which it found C.A.C. to be a sexual predator. C.A.C. and his mother were present at this hearing. Neither C.A.C. nor the State were represented by counsel at this hearing. After some preliminary discussion between the juvenile judge and Matt Wilson, a probation officer, concerning the issue of the retroactive application of the inclusion of misdemeanor sexual imposition among the statutory list of sexually oriented offenses, which the trial court found troublesome, the judge decided to proceed. C.A.C. was not represented by counsel at the hearing, and neither he, nor his mother, were invited to address the court concerning the retroactivity issue.
 {¶ 33} The only discussion of C.A.C.'s right to counsel came shortly after this, with the trial court proceeding as follows:
 {¶ 34} "THE COURT: Okay. C____, pursuant to Statute, particularly Revised Code of Ohio in 2152.82, provides for a classification of youth that have been found delinquent of sexually oriented offenses. You would follow — you would fall under that classification. You have the opportunity to speak, C____, if you'd like. You and your mother have the right, if you'd like, to testify, present witnesses or evidence. You have the right to have a lawyer assist you in this case. Ma'am, is C____ going to be represented by a lawyer?
 {¶ 35} "[C.A.C.'s mother]: Your Honor, sir, I just found out yesterday afternoon that it was a suggestion possibly to — to look for counsel. I'd shared with Mr. Wilson on a conversation earlier today that at this time me and my husband both do not wish to seek counsel at the present time.
 {¶ 36} "THE COURT: Okay. We'll proceed then in the absence of counsel, the election of the parent for the child. * * *."
 {¶ 37} C.A.C. was not asked whether he wanted the assistance of a lawyer, and neither asserted, nor waived, his right to the assistance of a lawyer at this hearing. At the conclusion of the hearing, C.A.C. was found to be a sexual predator, subject to all the consequences thereof, including a lifetime requirement of reporting his whereabouts to local authorities every 90 days.
 {¶ 38} C.A.C. appeals both from his adjudication of delinquency and his sexual predator classification.
 II {¶ 39} C.A.C.'s First Assignment of Error is as follows:
 {¶ 40} "THE TRIAL COURT VIOLATED [C.A.C.'s] RIGHT TO COUNSEL AND TO DUE PROCESS UNDER THE FIFTH, SIXTH, ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION16 OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.352
AND JUVENILE RULES 4 AND 29."
 {¶ 41} C.A.C. contends that the trial court erred by adjudicating him a delinquent, and later by classifying him as a sexual predator, without ascertaining that he was knowingly and voluntarily waiving his right to counsel. The State recognizes that C.A.C. had a right to counsel, but contends that he waived that right at all stages of the proceeding.
 {¶ 42} C.A.C. first argues that counsel was required to be provided to him, by virtue of R.C. 2151.352, unless he was represented by his parent, guardian or custodian. We have construed R.C. 2151.352 to permit a juvenile to waive the right to counsel if he is represented by a parent in the sense that a parent is present at the hearing, in a parental capacity as opposed to in an antagonistic capacity. In re R.B. (January 13, 2006), Clark App. No. 2005-CA-94, ¶ 25. C.A.C.'s mother was present at every hearing. From her remarks, it is reasonable to conclude that she was disappointed in her son, and was at a loss for how to deal with his terrible behavior, all of which is understandable, given the circumstances. Nevertheless, we see nothing in the record to suggest that C.A.C.'s mother was present in any capacity other than as a concerned parent. We therefore reject C.A.C.'s argument that he could not, consistently with R.C. 2151.352, have waived his right to legal counsel.
 {¶ 43} C.A.C. next argues that R.C. 2151.352 requires that a juvenile court ascertain, with respect to a party appearing without counsel, that the party knows of the right to counsel, and the right to be provided with counsel if indigent, and that Juv. R. 29(B) requires that counsel be appointed for any party who does not waive counsel. "In order to establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." State v.Gibson (1976), 45 Ohio St.2d 366, second paragraph of syllabus.
 {¶ 44} The hearing at which C.A.C. admitted the allegation of delinquency, and was thereby adjudicated to be delinquent, and the hearing at which C.A.C. was adjudged to be a sexual predator, were both significant stages of the juvenile proceedings. Together with the dispositional hearing, these were arguably the most important stages of the proceedings. As the State acknowledges, C.A.C. was entitled to legal counsel at all stages of juvenile proceedings, In re Doyle (1997),122 Ohio App.3d 767, 771. The State contends that C.A.C. waived that right.
 {¶ 45} We conclude that the record does not support a conclusion that C.A.C. waived his right to legal counsel at either the adjudicatory hearing or the sexual offender classification hearing.
 {¶ 46} In the hearings preceding the adjudicatory hearing, C.A.C. was from time to time advised of his right to legal counsel. He was never asked whether he was willing to waive that right. At the adjudicatory hearing at which his admission was accepted, he was never advised that he had a right to the assistance of legal counsel in connection with that hearing, who could advise him of the relative merits and consequences of admitting or of denying the allegation. Only after he tendered his admission was anything said about his right to counsel, and that was merely to advise him that by admitting the allegation, he was giving up his right to a trial, and with that, of course, his right to be represented by legal counsel at the trial. C.A.C. was never afforded the opportunity to request the assistance of legal counsel in connection with the hearing at which his admission was tendered and accepted, and he never indicated that he was waiving that right.
 {¶ 47} We conclude that in this case, as in In re Doyle,
supra, the record does not support a conclusion that the trial court ascertained that the juvenile understood that he had a right to the assistance of legal counsel in deciding whether to admit or to deny the allegation, and, with an understanding of that right, waived it.
 {¶ 48} At the sexual classification hearing, the trial court elicited a waiver of counsel from C.A.C.'s mother, but never ascertained whether C.A.C., himself, was willing to waive his right to legal counsel. "[N]o case in Ohio `has held that a parent can waive the constitutional right of a minor in a Juvenile Court or criminal case.'" In re Doyle, supra, at 772, citing In re East (1995), 105 Ohio App.3d 221, 224-225,663 N.E.2d 983, 985, and In re Collins (1969), 20 Ohio App.2d 319,322, 49 O.O.2d 448, 450, 253 N.E.2d 824, 827. We conclude, therefore, that the record in this case likewise does not support a conclusion that C.A.C. waived his right to legal counsel at the sexual offender classification hearing.
 {¶ 49} C.A.C.'s First Assignment of Error is sustained.
 III {¶ 50} C.A.C.'s Second Assignment of Error is as follows:
 {¶ 51} "THE TRIAL COURT ERRED WHEN IT CLASSIFIED [C.A.C.] AS A SEXUAL PREDATOR."
 {¶ 52} In support of this assignment of error, C.A.C. argues that the trial court erred when it gave retroactive effect to the addition, in 2003, of misdemeanor sexual imposition to the statutory list of offenses deemed to be sexually oriented offenses, requiring a sexual offender classification hearing. This issue is moot, given our disposition of C.A.C.'s First Assignment of Error. On remand, C.A.C. might not be adjudicated delinquent, the trial court, upon further consideration of the issue, assisted by the arguments of legal counsel on both sides, might agree with C.A.C. that the statutory addition ought not to have retroactive application, or the trial court might classify C.A.C. in a manner that C.A.C. might decide to accept.
 {¶ 53} Ordinarily, we might be inclined to address this issue, since it is possible that C.A.C. will, in fact, be adjudicated delinquent, and classified as a sexual predator, upon remand. We resist the urge. There was no development of this issue in the trial court other than a probation officer's musing that materials at a seminar he attended suggested that the addition of misdemeanor sexual imposition to the statutory list of sexually oriented offenses was intended to be retroactive. We have examined the two statutes the probation officer, Matt Wilson, cited to the trial court — R.C. 2152.82 and 2152.83 — and their application to this issue is not obvious to us. We note that both of those statutes provide for a sexual offender classification to be made at the time of disposition, as part of the dispositional order, unless the juvenile is committed to a secure facility, in which event the classification shall be made at the time of the juvenile's release from a secure facility. Our understanding is that the sexual offender classification hearing in this case was contemporaneous neither with the dispositional hearing, nor with the juvenile's release from a secure facility, which appear to be the only two times contemplated for the sexual offender classification hearing.
 {¶ 54} This issue is interesting, the answer is not obvious to this court, and we have not found the briefs to have been especially helpful on this issue. Therefore, we will treat this issue as moot, and overrule C.A.C.'s Second Assignment of Error as moot.
 IV {¶ 55} C.A.C.'s First Assignment of Error having been sustained, and his Second Assignment of Error having been overruled as moot, the judgment of the trial court accepting C.A.C.'s admission and adjudicating him delinquent is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
Wolff and Donovan, JJ., concur.
[1] In noting that the magistrate gave an identical recitation of rights at the subsequent arraignment, suggesting that a prepared statement was being read, we do not mean to imply criticism of this practice. It may be a salutary practice, to ensure that all rights are covered, in clear language, as long as the presiding magistrate or judge is willing to depart from the script upon any indication that the juvenile is uncertain about something.