### In re JOHNSTON.

[Cite as *In re Johnston* (2001), 142 Ohio App.3d 314.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 99–A–0057.

Decided April 30, 2001.

*Thomas L. Sartini,* Ashtabula County Prosecuting Attorney, and *Carol G. Grasgreen,* Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker,* Ohio Public Defender, *Jill E. Beeler* and *Kenneth T. Lee,* Assistant Public Defenders, for appellant.

WILLIAM M. O'NEILL, Judge.

In this accelerated calendar appeal, appellant appeals from the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, entered on July 30, 1999. After an adjudication hearing on June 2, 1999, Johnston was found to be delinquent by reason of violating R.C. 2909.05(B)(1)(b), vandalism, a felony of the fifth degree if committed by an adult, and of criminal trespass, a fourth-degree misdemeanor if committed by an adult. Johnston was sixteen years old at the time the offenses were allegedly committed, and at the time of the adjudication. On July 30, 1999, Johnston was committed to the custody of the Ohio Department of Youth Services for a minimum period of six months, or until he is age twenty-one, maximum. Johnston appeals on the grounds the trial court violated his right to counsel, and on the grounds improper hearsay testimony was used at his

adjudication hearing, violating his right to confront his accusers. The following facts are relevant to a determination of this appeal.

Johnston's initial appearance in juvenile court was on November 30, 1998, for two separate cases. One was for the alleged vandalism, and the other was for unruly behavior. The court informed Johnston that he had an absolute right to have counsel in the vandalism matter, but that if he wished to have counsel to address the unruly charge, he would have to retain counsel.

An adjudication hearing on the vandalism charge was set for April 13, 1999. At the hearing, the state asked for a continuance, which the court granted. Johnston was present without an attorney. Johnston's mother and stepfather were present. The court asked the parents if they intended to hire an attorney, and the mother indicated that she had told Johnston she would pay for an attorney, but left it to Johnston to contact and hire the attorney. She indicated that he failed to do so. Johnston indicated that he called the attorney, but did not "get a hold of him." At that point, Johnston or his parents indicated to the court they would hire their own attorney by the next hearing, and the hearing ended.

The adjudication hearing on the vandalism and criminal trespass charges was conducted on June 2, 1999. The trial court had previously disposed of the unruly child charge, for which Johnston had been responsible for obtaining his own counsel. The June 2 adjudicatory hearing was strictly for the vandalism and criminal trespass charges, for which Johnston had a right to counsel. Johnston appeared without counsel. The court raised the issue of the absence of counsel in the following manner:

"MAGISTRATE: Okay, are you prepared to go forward unrepresented today?

"JUVENILE: Yeah. I tried to get a lawyer, but they said they didn't have enough time to go through the case and see what was going on.

"MAGISTRATE: Well, we are coming up on almost a year. So I would hesitate to continue it any longer, but I would defer to you. Are you asking for a continuance or would you prefer to go forward today?

"JUVENILE: I would like one so I could get a lawyer. I don't really know what I'm talking about.

"PROSECUTOR: Your honor, I did have a continuance, for the court's information, last time this was set as one of my witnesses did not appear. The only reservation I would have on the continuance is Special Agent Leonard does come from Cleveland, so—

"MAGISTRATE: What attorneys did you speak with that said they couldn't be prepared for today?

"JUVENILE: I was like going through the phone book.

"MAGISTRATE: Did you call people?

"VOICE: (unintelligible) said they wouldn't take criminal charges.

"JUVENILE: A lot of them said they didn't take—they took juvenile cases, but not criminal juvenile cases.

"MAGISTRATE: Okay. And when did you make these calls?

"JUVENILE: I started like a week after the last time we went to court.

"MAGISTRATE: Since February 22, you haven't found—

"JUVENILE: Not really anybody (unintelligible).

"MAGISTRATE: I'm sorry?

"JUVENILE: My sister's (unintelligible) officer at YDC, Mr. Ken, gave me a couple names. But they wasn't in the phone book. He said they was Cleveland numbers, but they wasn't listed in the phone book.

"MAGISTRATE: Okay. I'm going to deny the request for a continuance. I think this has been rolling since the initial arraignment was November 30th, so I think you've had plenty, plenty, plenty, plenty, plenty of time to get an attorney, and at the very least you could have called up here and asked who handles criminal juvenile work, and I didn't get a call from you. So I think I'm going to go ahead and go forward and deny the continuance.

"Ms. Wetherholt [Prosecutor], opening statement."

The hearing proceeded with Johnston representing himself. It is noteworthy that when Johnston testified, his testimony consisted of stating where he was when the incident occurred. The state objected to this testimony on the grounds that Johnston had failed to provide the state with a notice of alibi as required by Crim.R. 12.1. The state was technically correct, and Johnston's entire defense was inadmissible as the result of his failure to appreciate that he needed to serve the prosecutor his notice of alibi at least seven days before his hearing. The court took this objection under advisement.

On June 4, 1999, the magistrate filed a decision recommending the court find Johnston delinquent by reason of violating R.C. 2909.05(B)(1)(b). The court adopted this recommendation on June 22, 1999. The matter was set for disposition on July 26, 1999, at which time Johnston was indefinitely committed to the Ohio Department of Youth Services for a minimum period of six months, to a maximum of age twenty-one. From this judgment, Johnston timely filed notice of appeal, assigning the following errors:

"[1]. The trial court violated Steve Johnston's right to counsel and due process under the Fifth, Sixth, and Fourteenth Amendments to the United States

Constitution, Article One, Section Sixteen of the Ohio Constitution, Ohio Revised Code Section 2151.352 and Juvenile Rules 4 and 29.

"[2]. The trial court committed plain error when it allowed the state to present hearsay testimony, in its case in chief, against Steve Johnston, in violation of his right to confront his accusers under the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution."

With respect to the first assignment of error, it is apparent that there was a violation of Johnston's constitutional rights. While it was understandable, it is nevertheless beyond question that Johnston was entitled to be represented by counsel at his adjudicatory hearing. We do not wish to dilute this point with an elaborate analysis.

In *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, the Supreme Court of the United States stated:

"A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child 'requires the guiding hand of counsel at every step in the proceedings against him.'" *Id.* at 36, 87 S.Ct. at 1448, 18 L.Ed.2d at 551, quoting *Powell v. Alabama* (1932), 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170.

This case exemplified the concerns of the court. The court further stated:

"We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." *Id.* at 41, 87 S.Ct. at 1451, 18 L.Ed.2d at 554.

In addition to the constitutional foundation of the right, it is also established by statute. Juv.R. 29 governs the conduct of adjudicatory hearings for juveniles. Juv.R. 29(B)(3) *requires* the court to inform unrepresented parties of their right to counsel and to determine if those parties are waiving their right to counsel. Juv.R. 4(A) stipulates that parties are entitled to appointed counsel if indigent. Juv.R. 29(B)(4) *directs* the court to appoint counsel for any unrepresented party under Juv.R. 4(A) who has not waived the right to counsel.

■ Thus, an adjudication proceeding cannot go forward unless the juvenile is represented by counsel or there has been a valid waiver of the right to counsel. There is no point in the record where a valid waiver occurred. On the contrary, Johnston indicated he wanted an attorney, at one point stating: "I would like [a continuance] so I could get a lawyer. I don't really know what I'm talking about." That fact was evident throughout the hearing.

■ In this case, the question of counsel was initially muddled because Johnston was also charged with unruliness. However, the unruliness charge was disposed of prior to the delinquency adjudication hearing. As previously stated, it is beyond question that he was entitled to counsel at the delinquency hearing. The record is clear that Johnston's mother, although she indicated she would pay for an attorney, left the task of hiring an attorney entirely up to Johnston, which was inappropriate. Johnston indicated to the court his attempts to retain counsel. His failure to succeed is more indicative of the inappropriateness of expecting him to do so than any dilatory behavior on his part. Hiring counsel for a child is a task that ought to be performed by an adult. Because the child was not waiving his right to counsel, and his parents had failed to obtain counsel for him, under the circumstances, the trial court should have conducted an inquiry pursuant to Juv.R. 4(A) to determine if Johnston was indigent and, if so, appointed counsel.

■ In terms of the analysis of whether there was a valid waiver of the right to counsel, it is irrelevant whether Johnston had intended to hire his own attorney, or the court needed to appoint counsel. To be effective, a waiver of the right to counsel must be voluntary, knowing, and intelligent. *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph one of the syllabus. Because courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, that waiver must affirmatively appear on the record. *Garfield Hts. v. Brewer* (1984), 17 Ohio App.3d 216, 217, 17 OBR 458, 459–460, 479 N.E.2d 309, 311–312. Because of the immaturity of the individuals appearing before a juvenile court, the court has a higher duty to be thorough in this regard. In the present case, it is clear there was no such waiver. Johnston's first assignment of error has merit.

With respect to the second assignment of error, it is evident from the record that two of the state's witnesses, Richard Jones and Special Agent Leonard, provided hearsay testimony and evidence. Although the second assignment of error is moot, we note that the Rules of Evidence do apply to adjudicatory proceedings in juvenile court. Presumably, the appointment of counsel to represent Johnston will prevent a recurrence.

The judgment of the trial court is reversed and the matter is hereby remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., concurs.

CHRISTLEY, J., concurs in judgment only.