JOURNAL ENTRY and OPINION
{¶ 1} Appellant C.S., a minor, appeals the juvenile court's finding him delinquent for committing one count of burglary and one count of theft. He assigns the following error for our review:
 {¶ 2} "I. The evidence is insufficient as a matter of law, to hold respondent-appellant delinquent in this matter."
 {¶ 3} Having reviewed the record and the legal arguments of the parties, we reverse the juvenile court's finding C.S. delinquent. The apposite facts follow.
 {¶ 4} On May 29, 2002, a complaint was filed in Cuyahoga County Juvenile Court alleging C.S. was delinquent for committing one count of burglary, in violation of R.C 2911.12(A)(2), and one count of theft, in violation of R.C. 2913.02(A)(1). The trial court held a joint adjudication hearing for C.S. and one of his codefendants, C.L.
 {¶ 5} On November 22, 2002, over the objection of the attorneys representing the juveniles, the trial court took the testimony of one of the witnesses without the victim of the crime being available. The witness, Mary Shaffer, testified that she lives on Dorver Avenue in Cleveland, Ohio. On April 29, 2002 she was looking out her front window when she observed four or five boys across the street pacing back and forth. It was late morning and the weather was cool and clear. She said she didn't think anything of it at first, but they were there for about a half hour to 45 minutes. She thought perhaps they were waiting for the teenage girl who lived there to come home from school, so she stopped looking. Her son then informed her that he saw some boys "jump" into the neighbor's window and into the house. Shaffer saw one of the boys enter the home through the window, but did not see anyone else enter.
 {¶ 6} Shaffer knew that no one was home at the neighbor's house and immediately called the police. She admitted she did not give the police a description of the boys when she reported the incident, other than stating they were "four or five black males."[1] Although she continued to observe the house after calling the police, she did not see the boys leave the house.
 {¶ 7} Ten to fifteen minutes later, the police brought four or five males back to Shaffer's house to be identified. Shaffer testified she did not get a good look at the boys "because the [police car] windows were rolled up and they were yelling at the police officers and stuff like that. I didn't — the police officer just told me to parade by the cars and see if those were the boys and I told them, you know, that's the only way I could identify them was the clothing they were wearing."[2] The boys were all "wearing heavy coats and hats"[3] like the boys she saw in front of the neighbor's house. She did not recall anything distinguishable about these coats or hats and she never saw the suspects' faces. She was unable to make an in-court identification of C.S. or his codefendant, C.L.
 {¶ 8} The court then continued the matter until the victim could appear to testify. On February 7, 2003, almost three months after the initial testimony, the trial resumed. Both attorneys for the juveniles moved to dismiss the case for lack of prosecution because the matter had been continued for so long and because the police officers failed to appear to testify even though subpoenaed to do so. The trial court overruled the motions.
 {¶ 9} Tracy Williamson then testified. She stated she was notified by telephone that her home had been broken into. When she arrived home, the police were waiting for her. The officer asked her if anyone was at home at the time and she told him that everyone was either at school or work. He then showed her some belongings, which she identified as hers. The belongings consisted of a VCR, a gallon jar of coins, jewelry and some food items. Williamson testified she recognized C.S.'s codefendant, C.L., from the neighborhood and identified him as being one of the boys in the patrol car. She also identified C.S. as one of the boys sitting in the police car.
 {¶ 10} C.S. and his codefendant, C.L., did not testify.
 {¶ 11} Based on the above evidence, the trial court found C.S. delinquent. At his disposition hearing, C.S. admitted he was with the boys in front of the house, but claimed he left before they broke into the house because he did not want to be involved. Instead he went to a store down the street. He then met up with them after they had burglarized the home.
 {¶ 12} The trial court ordered him to serve one year probation and to pay one fourth of the cost to repair damage to the victim's property.
 {¶ 13} In his sole assigned error, C.S. maintains the juvenile court's finding him to be delinquent was not supported by sufficient evidence because C.S. was never seen entering the victim's dwelling, nor was evidence presented indicating that C.S. was found with stolen property on his person.
 {¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[4]
 {¶ 15} This same standard applies to a challenge concerning the sufficiency of the evidence in an adjudication of juvenile delinquency.[5]
 {¶ 16} R.C. 2911.12(A)(2) defines the elements of burglary in pertinent part as:
 {¶ 17} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 18} "* * *
 {¶ 19} "(2) Trespass in an occupied structure * * * that is the permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;"
 {¶ 20} R.C. 2913.02(A)(1) defines the elements of theft in pertinent part as:
 {¶ 21} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 22} "(1) Without the consent of owner or person authorized to give consent."
 {¶ 23} A review of the record in the instant case indicates the sole witness to the crime, Mary Shaffer, testified to seeing four or five black males in heavy coats pacing in front of her neighbor's home for approximately 45 minutes. Her son told her that he saw some boys jump into the neighbor's window, but Shaffer herself only saw one of the boys jump into the window. Shaffer did not testify to how many boys her son saw enter the home and she did not identify C.S. as the boy she saw enter the home. Although C.S. was apparently picked up with this group of boys by the police, there is no indication that he was with the boys at the time of the burglary. Nor was any evidence presented that he had stolen possessions on his person implicating him in the crime. Both witnesses merely testified that the officers informed them the property was found on the boys. Because the officers failed to testify, this testimony constituted hearsay.[6]
 {¶ 24} Therefore, although there is evidence that C.S. was with the boys prior to the burglary because C.S. was one of the boys identified by Shaffer as pacing in front of the neighbor's house, and because he was with the boys after the burglary since he was picked up with them by police, there is nothing linking him to the actual crime. No evidence was presented that he entered the premises and there was no evidence that he had in his possession the stolen property.
 {¶ 25} Accordingly, we find the evidence was insufficient to support the trial court's finding him delinquent for committing the offenses of burglary and theft.
 {¶ 26} The judgment reversed and the cause is remanded.
Judgment reversed and cause remanded.
Michael J. Corrigan, A.J., and Frank D. Celebrezze, Jr., J., Concur.
[1] TR at 16.
[2] TR. at 21.
[3] TR at 12.
[4] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[5] In re N.K., Cuyahoga App. No. 82332, 2003-Ohio-7059 at ¶ 16; In re Mark W. (July 15, 1994), Huron App. No. H-93-58.
[6] In the Matter of: Stephen Johnston (2001),142 Ohio App.3d 314, 320.