THE STATE OF OHIO, APPELLEE, *v.* GIBSON, APPELLANT.

[Cite as State v. Gibson (1976), 45 Ohio St. 2d 366.]

(No. 75-264—Decided March 31, 1976.)

368

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. John V. Spalla,* for appellee.

*Mr. Hugh E. Wall III,* for appellant.

CELEBREZZE, J. The sole assignment of error, in the lower court as well as here, is that Robert Nolan Gibson was deprived by the trial court of his constitutional right to the assistance of counsel, as guaranteed him by the Sixth Amendment to the United States Constitution. Before passing on this ultimate question it is only proper to set forth the language used by both judges as well as Mr. Gibson as it pertains to the issue herein.

The following proceeding took place on April 15, 1974:

"MR. PATRICOFF: I will be here, your Honor. Mr. Gibson is before the court and I told him he would have the right to submit to the court what he has on his mind. I might mention to the court that his brother had retained me to represent him and paid me a fee. I have been paid. I must have had about four or five visits and conferences with Mr. Gibson at the county jail. And he also sent me a letter concerning the employment on March the 4th from the county jail. And as of Friday, he stated I was not the

lawyer of his choice and he wanted me to be removed from his case and I told him that once I entered an appearance and signed a certificate of appearance which explains to him that he understood that this court would not release me from the case. So do you have something you want to say to the Judge, Mr. Gibson?

"DEFENDANT: Just what he said. I don't want him to represent me.

"THE COURT: Well, you are free to select anyone else. We do not make appointments when experienced counsel is available and has appeared. So you do have counsel, experienced counsel. If you can provide someone else, that is your choice. You are free to exercise that but that is the extent. Mr. Patricoff cannot be released until you have supplied another attorney."

And on April 17, 1974, just prior to trial:

"THE COURT: Let the record show that the court is in chambers in the presence of Assistant Prosecuting Attorney James Wilson. Defense Counsel Jack Patricoff, and the Defendant himself, Robert Gibson, together with two Sheriff's Deputies.

"There's a couple of matters, Mr. Gibson, that must be cleared up before the trial begins. My name is Judge Phillips. This case was transferred to me just yesterday, because the Judge, one of my colleagues, was unable to try the case so he asked me to fill in, which I agreed to do. I know nothing about the case. I know that the charge is Armed Robbery, and that's all I know about the case.

"The first question I have since this is a jury trial and not a bench trial—A bench trial means a case that's tried by the judge without a jury. Since this is a jury trial, you are entitled by law to appear before this Jury in street clothes, not in jail clothes, and I am going to ask the Sheriff's Deputy, have civilian clothes been made available to the Defendant?

"SHERIFF'S DEPUTY: The Defendant says he didn't want it.

"THE COURT: Is that correct, Mr. Gibson?

"MR. GIBSON: That's correct.

"THE COURT: You understand you have a right to appear in court in civilian clothes, and it is your own choice that you prefer to appear in the jail clothes which you are now wearing?

"MR. GIBSON: Right.

"THE COURT: Is that correct?

"MR. GIBSON: Right.

"* * *

"MR. PATRICOFF: Your Honor, there is something I'd like to get in the record. I was retained by a member of Mr. Gibson's family. He paid me a retainer fee, a fee that I had requested. The party was in my office on January 29th, 1974 in connection with this indictment against Robert Gibson concerning Armed Robbery.

"Following that I had an interview with Mr. Robert Gibson at the County Jail on February the 5th, 1974, and another with him on February the 8th, 1974, another one February 19th, 1974, another one on March 13, 1974, another one on March 14, 1974, another interview with him March 22, 1974, another one April 12, 1974, and April 16, 1974, all at the Montgomery County Jail. We discussed various matters which I am not going to disclose now to the Court concerning this matter. I have conducted quite a bit of investigation in addition to these interviews. There have been the following court appearances where I appeared, the arraignment, appeared with the Defendant on February 8, 1974, before Judge McBride, pretrial on February 15th, 1974, another one on March the 1st, 1974 before Judge McBride, another appearance before Judge McBride on March 15th, 1974, another one on March 22nd, 1974, and the case was scheduled for trial on March 15th, 1974.

"Monday of this week we appeared before Judge McBride, and when I say 'we,' the Defendant and myself and a representative of the Prosecutor's Office, and at which time the matter was postponed until this date. When we appeared in Judge McBride's court on Monday, April the 15th, 1974, Mr. Gibson reported to Judge McBride he did not care to have me represent him as attorney, and

Judge McBride did explain to Mr. Gibson that under our rules since the family did retain me, he, Judge McBride, could not release me as the attorney for Mr. Gibson but did state for Mr. Gibson the trial would commence today; if he was able to engage another attorney to represent him today, then Judge McBride would release me, but other than that, I would not be released.

"THE COURT: Very well. The Court makes due note of the information that you have called to my attention. Is there anything further that you wanted to state for the record?

"MR. PATRICOFF: No.

"THE COURT: Is there anything any party wishes to state for the record at this time?

"MR. PATRICOFF: Mr. Gibson might.

"THE COURT: Just to be crystal clear that you understand what's taking place, the trial is about to commence. In the event you are acquitted obviously that's the end of the case. In the event you are convicted you would have a right to appeal your conviction. The young lady, Mrs. Hargrose, is a Certified Court Reporter and takes down every word that is said. So, if there is anything you want to say to preserve your right for a possible appeal, you may do so, and it will be in this record so that in the event you are convicted and file an appeal the higher court will have the opportunity to review what has occurred here.

"MR. GIBSON: I don't believe too much in a person's rights, you know, but from my understanding I have a right to choose my own lawyer. Right or wrong?

"THE COURT: Correct.

"MR. GIBSON: I never chose him.

"THE COURT: Well, he has been retained on your behalf. You have never requested his discharge, according to the statement just made, up until a couple of days before trial although the case has been pending for several months. You cannot and will not be permitted to delay the proceedings by a last minute change of mind unless you go out and bring in a new lawyer. You have not pro-

duced a new lawyer to represent you. Therefore, Mr. Patricoff, in accordance with Judge McBride's order, will not be released from the case, and he will proceed to defend you to the best of his ability. I will comment—Whether you have a good relationship with him or not is not for me to pass judgment on. I will comment that Mr. Patricoff is among the most experienced lawyers that handle criminal matters in these courts. I believe Mr. Patricoff has been practicing law and specializing in criminal matters for about ten years longer than I have been born. So you will have the benefit of a thoroughly experienced lawyer in criminal matters. If you are dissatisfied with his representation, I can't help that.

"MR. GIBSON: What do you tell me, that there is a —you are telling me there is a time limit on which I can get rid of a lawyer if I don't wish him to represent me?

"THE COURT: Only reasonable time. You can get rid of him this morning if you have another lawyer to represent you, or if you wish to go to the court unrepresented—

"MR. GIBSON: *I'll go into the court unrepresented.*

"THE COURT: You may do so, but I am going to caution you very very carefully that's about the same thing as going in an operating room and trying to remove your own appendix. I will caution you if you go in there unrepresented, I will make a finding in the record that you have an opportunity to be represented by counsel; he has been retained; his fee has been paid, I understand.

"MR. GIBSON: That's correct, your Honor.

"THE COURT: He is ready, willing, able, and available to defend you.

"MR. GIBSON: *I'll go in there by myself.*

"THE COURT: One other point that I am going to mention, and then you can do as you see fit. You cannot and will not be forced to have Mr. Patricoff participate in the case. I caution you, however, that if you attempt to defend yourself, you are bound by the same rules of evidence that bind a lawyer, and if you don't know those rules of evidence—and I presume you don't since you are not a

lawyer to the best of my knowledge—when you attempt to question any witnesses to defend yourself, you may find that you are not able to ask any questions simply because you don't know the proper way to put the questions; and if a question is improperly asked, the court; that is, me, will stop you from asking the question. So, I am cautioning you that you may find you are in the position that you are unable to ask any questions, and you are unable to present a defense, because you do not know how. If you wish to take that risk, which could possibly prevent you from ever getting your story told, that's up to you. I cannot and will not function as your lawyer to lead you along. That's not my role, so I am telling you with caution you are facing a heavy charge, a first degree felony under Ohio law, which I am sure you are well aware carries a maximum penalty of 25 years; so, this is hardly a trifling matter. So, I personally would strongly urge you to permit experienced counsel to participate in your defense. If you do not wish to do so, you are over 21, I presume, and I have made it as plain to you as I am capable of making it what a dangerous course you are embarking on in my opinion. You are facing the heaviest charge in Ohio law with the exception of two or three charges such as a murder, and to attempt to do so without an attorney to represent you in my opinion is a most dangerous course.

"Now, I am not saying that because you have an attorney you would be acquitted. I have no idea if the Prosecutor can prove the case he is going to attempt to prove or not. You are, of course, presumed innocent. It is simply my opinion that you have a much, much lesser chance to be adequately represented if you are representing yourself. Now—

"MR. GIBSON: *I'm still going in there by myself.*

"THE COURT: You—

"MR. GIBSON: I can't—you tell me I can't get another lawyer.

"THE COURT: I did not tell you that. You can get another lawyer. At any time from this minute until the trial concludes you may have a lawyer step in and begin repre-

senting you.. I have not and I am not telling you you cannot get another lawyer. You may get four other lawyers if you wish. There is no limit. Bring in all the lawyers you wish. You have had notice of this trial for months. Now, the case will not be delayed at this point. This was never called to the Court's attention earlier than this past Monday, I have been informed.

"MR. PATRICOFF: Yes.

"THE COURT: That being the case, the matter will not be delayed. That's all I can tell you.

"Mr. Patricoff, inasmuch as you have been retained and paid, you will be instructed to remain in the courtroom.

"MR. PATRICOFF: I will do that, Your Honor.

"THE COURT: Away from counsel table. You will sit at the side, available to the Defendant. If he wishes to ask you any question as to a point of law, he may do so.

"Mr. Gibson, I will instruct Mr. Patricoff to sit at counsel table with you, if you wish, simply for you to be able to ask him any questions you wish to ask him about how you can proceed, if you wish that. If you don't want him at the table with you, he will sit at the side of the courtroom and be available in the event you want to call him over to ask him any questions.

"MR. GIBSON: *I'll sit by myself.*

"MR. PATRICOFF: I will sit out three days. I assume the Court is ordering me to do so.

"THE COURT: Yes.

"MR. PATRICOFF: I am accepting that order.

"THE COURT: You will sit on the side of the courtroom available to Mr. Gibson to answer any questions he may have on procedure, evidence, rules of evidence, or any other questions he may have as to his rights in the course of this trial. You will not participate in the trial unless the Defendant requests you to participate, and in the same line along with your change of clothes that I mentioned earlier, Mr. Gibson, I have had this occur before during my time on the bench where defendants chose to represent themselves and part way through the trial changed their

minds. I want to advise you if at any time you change your mind, Mr. Patricoff will at that time be ready to step in and begin at any time during the trial from beginning to end. Mr. Patricoff will pick up at that point and do whatever he is able to do on your behalf if you change your mind. Nobody is going to make you change your mind. I am simply advising you you have a right to do so.

"MR. GIBSON: I can appeal this for not being able to choose my own lawyer; right?

"THE COURT: You can appeal anything from any court other than the Supreme Court of the United States. Every court in this land other than the Supreme Court has a higher court over it to which you may appeal. You may appeal anything that happens in this court to a higher court.

"MR. WILSON: What, if any comment will be made regarding representation in the courtroom?

"THE COURT: The Court will explain to the Jury.

"MR. PATRICOFF: I will be available the same as if I were at the counsel table.

"THE COURT: You will sit on the side of the courtroom, in the well of the courtroom, not in the spectator section.

"MR. PATRICOFF: I understand your order clearly, and I will comply." (All emphasis added.)

To quote further from the record in order to fully disclose the lengths to which the trial judge went in cautioning the defendant as to the seriousness of his election to represent himself would require an unduly protracted disquisition.

We agree with the defense that the Sixth Amendment to the United States Constitution provides that an accused shall be entitled to have the assistance of counsel for his defense. And this court is satisfied that under *Gideon* v. *Wainwright* (1963), 372 U. S. 335, and its progeny, it is the duty of the state to provide an attorney for an indigent defendant, *i. e.*, for a defendant who cannot afford to retain his own lawyer.

Defense counsel cites the case of *Johnson* v. *Zerbst*

(1938), 304 U. S. 458, in support of his contention concerning the "intricate, complex and mysterious" proceedings more commonly known as a jury trial. A reading of *Johnson* v. *Zerbst* reveals little, if any, relationship to this case. The defendants in that case were indicted on January 21, 1935; tried and convicted on January 23rd; and, by January 25, 1935, were in the federal penitentiary in Atlanta. The defendants, in *Zerbst*, were unable to employ counsel for their trial, and, without any explanation by the court as to their right to trial counsel, defendants stated that they were ready for trial. Justice Black writing for the majority, at pages 467-468, stated:

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. * * *"

Defense counsel sets forth the following quote from *Powell* v. *Alabama* (1932), 287 U. S. 45, at page 68:

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. * * *"

Counsel cites further the following from *Von Moltke* v. *Gillies* (1948), 332 U. S. 708, 723:

" * * * This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver

by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. * * *''

A reading of the lower court's admonitions to defendant herein complies almost to the letter of the two quotes in the *Powell* and *Von Moltke* cases, *supra*.

It would thus appear to this court that the defendant had sufficient warning from the trial judge of the seriousness of the trial and the possible results it could have for his liberty and life. We are satisfied that the defendant, knowingly, voluntarily and intelligently elected to defend himself.

It is noted that the defendant was not a novice in the field of criminal law. He was possessed of a 12th grade education, and the record shows he was capable of questioning witnesses on cross-examination and presenting a defense of alibi in his own behalf. He was quite glib in his manner of expression and apparently unoffensive in his conduct.

The recent case of *Faretta* v. *California* (1975), —— U. S.——, 45 L. Ed. 2d 562, would appear to dispel any doubts on the right of a defendant in a criminal case to represent himself.

The court stated that the Sixth Amendment as made applicable to the states by the Fourteenth Amendment guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself *without* counsel when he

378

knowingly, voluntarily and intelligently elects to do so.

The Supreme Court concluded that although the right to self-representation may not be stated in that exact language, the right to make one's own defense personally is implicit in the structure of the Amendment.

The state of Ohio through its codified statutes and Rules of Criminal Procedure has sought to provide for the positive statements of the Sixth Amendment.*

However, this court recognizes the rule that a defendant has a constitutional right to conduct his own defense without the aid of counsel and may waive his right to counsel at his trial even though that counsel is retained, paid and present. And while, in retrospection we may question the wisdom of such a decision, as indeed the defendant has, we are satisfied that it was validly made. The trial court conducted a complete inquiry which did comport with the accepted standards of laying a foundation to accept a waiver of counsel and the defendant knowingly and intelligently exercised his rights.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.

---

*R. C. 2941.50(A) reads, in pertinent part, as follows: "* * * and if he is *without* and *unable* to employ counsel, the court shall assign him counsel * * *." (Emphasis added.)

Crim. R. 44(A) reads: "Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him * * *."