The STATE of Ohio, Appellee,

v.

McQUEEN, Appellant.

[Cite as *State v. McQueen* (1997), 124 Ohio App.3d 444.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APA05–736.

Decided Dec. 18, 1997.

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Amy H. Kulesa*, Assistant Prosecuting Attorney, for appellee.

*W. Joseph Edwards*, for appellant.

BOWMAN, Judge.

On January 13, 1997, appellant, John W. McQueen, was indicted on one count of domestic violence, which was elevated to a felony due to a previous conviction for assault. On the day the trial was to commence, appellant requested that he be permitted to proceed *pro se*, as he knew the case better than his counsel. The trial court granted his request, although his counsel remained present during the trial in an advisory capacity. The jury found appellant guilty of domestic violence, as well as finding that appellant had a previous conviction of assault. Appellant now brings this appeal, asserting the following assignments of error:

"Assignment of Error One

"The trial court commits prejudicial error when it fails to hold a pretrial hearing on the issue of self–representation, contra the Sixth Amendment.

"Assignment of Error Two

"When the trial court interjects its personal opinion as to the defendant's credibility and propriety of his defense, limits cross–examination and continually mocks and ridicules the defendant, who is acting as his own counsel, all of which occurs before the jury, the defendant is denied his right to a fair trial."

In his first assignment of error, appellant asserts that the trial court erred when it did not hold a pretrial hearing to determine whether appellant was capable of representing himself or whether he understood the risk he was taking by representing himself.

In *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, the court held that a defendant in a criminal trial has an independent constitutional right to represent himself and that he may proceed in that manner when he knowingly, intelligently, and voluntarily elects to do so; however, the court also held, at paragraph two of the syllabus:

"In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right."

The court then outlined the manner in which to establish an effective waiver by quoting from *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723–724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321:

" 'To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " *Gibson* at 377, 74 O.O.2d at 531, 345 N.E.2d at 406.

In *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, the court held that the trial court erred in forcing the defendant to accept a public defender and in denying his request to conduct his own defense. The court found that the defendant had an independent constitutional right of self-representation and could choose to defend himself without counsel, if that choice was voluntarily and intelligently made. The court stated, at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–582:

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. * * * Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann* [1942], 317 U.S. [269], at 279 [63 S.Ct. 236, at 242, 87 L.Ed. 268, at 268–270]."

■ In this case, the trial judge conducted a very minimal inquiry with appellant about representing himself.[1] The court did not address with appellant the importance of having counsel, the benefit counsel's experience could provide, or the risks of proceeding on his own. In fact, the court did not even apprise appellant of his right to be represented by counsel. It also failed to apprise appellant of the nature of the charges, the statutory offenses included within those charges, the range of possible punishments under the charges, the possible defenses to the charges, and circumstances in mitigation of the charges. The exchange between the court and appellant was far from the long and thorough investigation required by *Von Moltke*. Consequently, this court finds that the trial court erred in failing to make appellant aware of the dangers and disadvantages of his representing himself and failed to establish that appellant knew what he was doing in representing himself as required by *Adams* and *Faretta*. Accordingly, appellant was denied a fair trial and his first assignment of error is well taken.

In his second assignment of error, appellant asserts that the trial court denied him a fair trial by interjecting its personal opinion and making other comments in front of the jury throughout the trial. Appellant asserts that the trial court's actions cast appellant in a poor light and, in effect, constituted negative comments on appellant's character and credibility. Appellant also asserts that, because the trial court appeared confused about his defense of the case, it unfairly limited appellant's right to cross-examine the witnesses.

---

1. The entirety of the court's inquiry on the issue of appellant representing himself is as follows:

"THE COURT: My understanding is that you want to try this case yourself?

"THE DEFENDANT: Yes, sir.

"THE COURT: Why is that?

"THE DEFENDANT: Because I feel I know I could try the case better than my attorney. I think I know more about the case than he does. I have 160 hours paralegal. I know the order of the court.

"THE COURT: You understand—have you ever read the Rules of Evidence?

"THE DEFENDANT: Beg your pardon?

"THE COURT: Have you ever read the Rules of Evidence?

"THE DEFENDANT: In several different states.

"THE COURT: How about Ohio?

"THE DEFENDANT: Yes, I have.

"THE COURT: Do you understand that you have a right to try this case yourself, that you have to comply with the rules?

"THE DEFENDANT: Yes.

"THE COURT: And Mr. Kentner will sit there, and he will give you advice if you want it. Do your understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: You still want to try it yourself?

"THE DEFENDANT: Yes.

"THE COURT: Okay. * * * "

At various times throughout the trial, the court made the following comments in front of the jury:

"So if you intend to try to show that you were justified in striking your wife—."

"Whether or not this lady [the victim] has gone to one psychiatrist, a thousand psychiatrists or no psychiatrists has nothing to do with any justification for either hitting her or taking a knife after her. It is, therefore, irrelevant to this case. I am not letting it into evidence."

"This lady testified very clearly, I think that she took out a warrant against you for domestic violence in November because you threatened her with a knife."

"She's also testified very clearly that you slapped her on I think the right side of her face in December."

"[I]f you have evidence that you would like to put on before this jury to establish that you did not hit her in the December incident, you did not threaten her with a knife in the November incident, be my guest, put it on."

"I'm not going to argue the law with you, Mr. McQueen. I might add, I don't argue the law with lawyers. I have the obligation and responsibility to determine what the law is in every case I try. And I have been doing this for 11 years or 10 years. I have been a lawyer for 22 years, and I dare say that I have a great deal more experience than you do."

"If you can't prove what you say, then you lynch yourself."

Many of the above quotations relate to appellant's attempt to admit into evidence various aspects of his theory of the case, which was that he did not assault the victim. Appellant attempted to offer two reasons as to why the victim was lying about being assaulted by appellant: the victim had mental problems or a mental condition and she had been involved in numerous affairs with other men and wanted appellant in jail so that she could continue the affairs. Regardless, the trial court refused to admit any evidence about the victim's mental state or any affairs she might have had.

In addition, during the trial, Robert Lawson was called as a witness on behalf of the state as an expert in fingerprint comparison. Lawson compared the disposition sheet of John Willie McQueen from November 15, 1996, with the disposition sheet of John Wesley McQueen dated January 4, 1997, and determined that they were the fingerprints of the same person. The prosecution then requested that Lawson fingerprint appellant, to which appellant objected. The following dialogue then occurred in front of the jury:

"THE COURT: Mr. McQueen, unless you stipulate that you are the same John McQueen that was involved in these two prior cases—

"THE DEFENDANT: She's already proven. I don't have to stipulate anything. She's already proven.

"THE COURT: Then we are going to take your fingerprints right now. Now what is it going to be? I don't care.

"THE DEFENDANT: Beg pardon?

"THE COURT: Unless you are willing to stipulate or agree that you are one and the same John McQueen who was convicted in Municipal Court December 2nd, 1996 for assault, also who was charged in this case, I'm going to let him take your fingerprints.

"Now the choice is yours. I don't care.

"THE DEFENDANT: Your Honor, I merely ask you to tell me what does that add to * * * that? He's already stated he's an expert, expert, already stated I'm one and the same man.

" * * *

"THE COURT: Unless you are willing to stipulate or agree that you are the same John McQueen who was convicted back in December 2nd, 1996 in Municipal Court of assault, I'm going to order that you submit to fingerprints right now.

"THE DEFENDANT: Let's do it.

"THE COURT: All right, fine. Can you help them, Deputy, roll his finger and all that good stuff. You can get up, do what you need to do."

Thereafter, appellant was fingerprinted in open court. After examining appellant's fingerprints and comparing them to the fingerprints on the two disposition sheets, Lawson opined that appellant's fingerprints were the same as those on the two disposition sheets. It is apparent appellant did not understand what the court meant by a stipulation, and the trial court, in the presence of the jury, presented him with an ultimatum, the consequences of which he was unable to evaluate properly.

In *State v. Wade* (1978), 53 Ohio St.2d 182, 188, 7 O.O.3d 362, 365, 373 N.E.2d 1244, 1248, vacated in part, *Wade v. Ohio* (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157, the court set forth five factors to be considered in determining whether a trial judge's remarks were prejudicial:

"(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their

possible impairment of the effectiveness of counsel." See, also, *State v. Scott* (1986), 26 Ohio St.3d 92, 96, 26 OBR 79, 82–83, 497 N.E.2d 55, 59.

However, the court also noted that the judge must be cognizant of the effect that his comments might have upon the jury. In *State v. Thomas* (1973), 36 Ohio St.2d 68, 65 O.O.2d 216, 303 N.E.2d 882, the court commented that no absolute prohibition exists to preclude a judge from commenting during a trial; however, the judge must also bear in mind that his influence on the jury can be, and properly is, of great weight. See, also, *Starr v. United States* (1894), 153 U.S. 614, 14 S.Ct. 919, 38 L.Ed. 841. The court also stated that, as a matter of judicial notice, juries are highly sensitive to every remark made by the trial judge, who is the ultimate authority in his courtroom.

This court notes that appellant objected to some of the statements quoted above; however, unlike the trial court in *Wade,* the judge made no effort to negate the impact of his remarks or correct the impact the statements might have made on the jury. In other instances, appellant attempted to explain his theory of the case, that is, that the victim had reasons to lie, how he was trying the case, and the evidence he was attempting to provide, but the trial judge prevented the explanation and made no effort to mitigate the circumstances surrounding this exchange.

■ This court notes that the evidence of the victim's mental state and her extramarital affairs should have been admitted into evidence, not because appellant was using this evidence as justification for committing domestic violence, but, rather, because appellant was using this evidence to show why the victim might have fabricated the assault. In *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265, the court held that an accused is permitted to cross-examine as to any ulterior motives, bias, or prejudice to explain why a witness might testify in a certain manner. See, also, Evid.R. 611(B). Thus, appellant had the right to show that the victim had an incentive or reason for fabricating the allegation against him, and the evidence about the victim's mental state and extramarital affairs was relevant to this issue.

■ This court finds that the cumulative effect of the trial court's statements and comments, the repetitive nature of a number of them, and the order that appellant be fingerprinted in court prejudiced appellant and denied him a fair trial. The trial court repeatedly validated the victim's testimony and repeatedly stated that appellant had harmed the victim with a knife and hit her. The trial court also called into question appellant's ability to conduct the trial by making comments about the judge having more experience than appellant and telling him that he would "lynch" himself if he could not prove what he was advocating.

Considering the five factors set forth in *Wade*, this court finds that appellant was prejudiced by the trial court's comments. The fact that the trial court admonished the jury during its instructions to disregard anything it said or did that might have indicated its view of the case does not negate its many prejudicial actions during the trial. Accordingly, appellant was denied a fair trial, and his second assignment of error is well taken.

Based on the foregoing, appellant's two assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

LAZARUS and CLOSE, JJ., concur.