OPINION
{¶ 1} Defendant-appellant, Albert L. Montgomery, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of burglary in violation of R.C. 2911.12, a felony of the fourth degree. Because the trial court failed fully to inquire of defendant before accepting his waiver of counsel, we reverse.
 {¶ 2} According to the state's evidence, on March 24, 2002, Charlene Steward was house-sitting for Roosevelt Reed while Reed was at work. In the early morning hours, a rumbling and loud banging noise from the back porch area of the residence awakened Steward. Steward investigated, heard an individual calling out someone's name, and found an individual passed out on the back porch. The individual apparently had broken through a locked door to the porch and had damaged a window on the porch. At the time of the incident, Steward could only barely see the individual, and at trial Steward could not definitively identify defendant as the person who had broken into Reed's residence.
 {¶ 3} Within several minutes of Steward's call to 911, police arrived at the scene and found defendant, apparently asleep, lying inside the porch area. Police officers arrested defendant, who initially provided police with incorrect identifying information, but later provided correct information about his identity. During an interview with a detective at police headquarters, defendant informed the detective that the house in which defendant was apprehended belonged to a friend, Calvin. Defendant told the police Calvin owed defendant $70 from a marijuana sale and defendant had bought shoes from him.
 {¶ 4} By indictment filed April 2, 2002, defendant was charged with one count of burglary, a second degree felony, in violation of R.C.2911.12(A)(2). During the jury trial on the charge, defendant proceeded pro se and did not present a case. The jury found defendant guilty of burglary as charged in the indictment. Following the verdict, defendant, through standby counsel, moved for acquittal pursuant to Crim.R. 29. Defendant contended the state failed to prove defendant had entered the Reed residence with intent to commit a crime, and thus the state failed to prove burglary as charged in the indictment.
 {¶ 5} At the sentencing hearing, the trial court granted defendant's Crim.R. 29 motion and set aside the jury verdict, but the trial court found defendant guilty of the lesser-included offense of burglary, a felony of the fourth degree. The trial court sentenced defendant to 17 months of incarceration, to be served concurrently with the sentence from another case. Defendant timely appeals, assigning two errors:
 {¶ 6} "I. The trial court erred to the prejudice of the defendant-appellant by violating appellant's constitutional right to a jury trial by convicting him of burglary.
 {¶ 7} "II. The trial court erred to the prejudice of the defendant-appellant by failing to advise appellant of his right of self-representation in violation of his rights under the Sixth Amendment to the United States Constitution."
 {¶ 8} Defendant's first assignment of error asserts the trial court violated defendant's right to a jury trial by convicting defendant of burglary pursuant to R.C. 2911.12(A)(4) at the time it granted defendant's Crim.R. 29 motion.
 {¶ 9} At the outset, we observe defendant at the sentencing hearing failed to object to the trial court's finding defendant guilty of fourth degree felony burglary. Absent objection, defendant must prove plain error. State v. Kelly, Franklin App. No. 02AP-195, 2002-Ohio-5797, at ¶ 26. See, also, State v. Peagler (1996), 76 Ohio St.3d 496, 499
("[g]enerally, an appellate court will not consider any error that counsel could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court").
 {¶ 10} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, even if defendant satisfies the requirements of the rule, "Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. [The Supreme Court has] acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" State v. Barnes (2002),94 Ohio St.3d 21, 27, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Accordingly, we consider defendant's first assignment of error under a plain error standard.
 {¶ 11} In State v. Cass (Nov. 9, 2000), Franklin App. 99AP-1422, cause dismissed (2001), 91 Ohio St.3d 1466, and dismissed, appeal not allowed, 92 Ohio St.3d 1412, this court noted a court's power to modify a verdict pursuant to Crim.R. 33(A)(4) when elements of a lesser-included offense have been satisfied. See, also, State v. Reed (1981),65 Ohio St.2d 117, 123; Crim.R. 33(A)(4) (providing that trial court may modify verdict without granting or ordering a new trial if evidence demonstrates defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree, or of a lesser-included crime).
 {¶ 12} Here, after granting defendant's Crim.R. 29 motion, the trial court found defendant guilty of burglary pursuant to R.C.2911.12(A)(4), a felony of the fourth degree, without ordering a new trial. As noted in State v. Powers (Jan. 30, 2001), Franklin App. No. 00AP-815, burglary as defined in R.C. 2911.12(A)(4) is a lesser-included offense of burglary under R.C. 2911.12(A)(2). Under Cass, Reed and Crim.R. 33(A)(4), the trial court did not err in convicting defendant of burglary under R.C. 2911.12(A)(4), without additional trial proceedings, after it set aside defendant's conviction under R.C. 2911.12(A)(2). Accordingly, defendant's first assignment of error is overruled.
 {¶ 13} Defendant's second assignment of error asserts the trial court erred because it failed to advise defendant of his right to self-representation under the Sixth Amendment to the United States Constitution.
 {¶ 14} "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." State v. Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus, citing Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525. "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." Gibson, paragraph two of the syllabus. The United States Supreme Court in Faretta did not set forth detailed guidelines concerning what information should be conveyed to a pro se defendant, but instead simply stated a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'" Faretta at 835, quoting Adams v. United States ex rel. McCann (1942), 317 U.S. 269, 279, 63 S.Ct. 236.
 {¶ 15} As this court noted in State v. Fair (Sept. 17, 1996), Franklin App. No. 96APA01-93, "in ascertaining the sufficiency of a trial court's inquiry, many courts reference the matters mentioned in Justice Black's plurality opinion in Von Moltke v. Gillies (1948), 332 U.S. 708, which states, in pertinent part:
 {¶ 16} "`* * * To be valid [a defendant's] waiver [of counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.' Id. at 724."
 {¶ 17} Fair further observed that "[c]ourts in this state generally have followed the standard enunciated in Von Moltke. See, e.g., [State v.] Doane [(1990), 69 Ohio App.3d 638] at 646-647; State v. Overholt (1991), 77 Ohio App.3d 111, 117; and State v. Weiss (1993),92 Ohio App.3d 681. See, also, [State v.]Gibson [(1976), 45 Ohio St.2d 366] at 377 (trial court complied with Von Moltke `almost to the letter'; thus, defendant `had sufficient warning of the seriousness of the trial and the possible results it could have for his liberty and life')." However, "`[t]he determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Fair, quoting Johnson v. Zerbst (1938), 304 U.S. 458, 464, 58 S.Ct. 1019.
 {¶ 18} Subsequent to Fair, this court in State v. McQueen (1997),124 Ohio App.3d 444, 447, construed Faretta, Von Moltke, and Adams and determined that McQueen was denied a fair trial because the trial judge conducted a very minimal inquiry concerning appellant's desire to represent himself. Defendant urges us to apply McQueen and to conclude defendant also was denied a fair trial; the state cites us to Fair. Neither case is precisely like the appeal before us.
 {¶ 19} McQueen is factually distinguishable from defendant's case, as the trial court's inquiry about McQueen's wish to represent himself was less extensive than the trial court's inquiry in this case. See McQueen at 447, fn. 1. Instead, the facts of this case are more similar to those in Fair. Because nothing in McQueen suggests Fair should have been decided otherwise, we compare the principles this court enunciated in Fair with the trial court proceedings in defendant's case.
 {¶ 20} Unlike Fair, the trial court at the beginning of defendant's trial directly asked defendant if he wanted to proceed without counsel, and because defendant indicated he did, the trial court reviewed trial procedures with defendant in detail, including voir dire, evidence, and closing arguments. Cf. Fair ("the trial court did not conduct an inquiry of defendant. Indeed, the trial court never directly asked defendant if he wanted to represent himself, and thereby waive his right to counsel"). Nonetheless, in its initial inquiry, the trial court, in this case, did not ascertain any of the Von Moltke factors, including whether defendant understood the significance of the proceedings and the risks and potential sentence he undertook if his defense were unsuccessful. Indeed, the record is equivocal whether defendant ever was advised, or had any understanding, of the nature of the charges prior to commencement of trial, as the record only reflects that defense counsel discussed different plea arrangements with defendant prior to trial. Nothing in the record indicates defense counsel reviewed the strengths and weaknesses of defendant's case, as well as his options, as in Fair. See Tr. 10-11. Cf. Fair ("just before trial began, defendant's standby counsel advised the court he thought he had explained to defendant some of the strengths and weaknesses of defendant's case, as well as his options").
 {¶ 21} Additionally, although defendant had previous involvement with the criminal justice system, see Sentence Hearing Tr. 11 (noting defendant incarcerated on two prior occasions and had serious juvenile record), the record suggests defendant did not have past experience in criminal trials. See, e.g., Tr. 12 (prosecutor's commenting that defendant had "never done this before" and defendant "hasn't even been through a trial before"). Cf. Fair (noting defendant "had `some experience in criminal trials' ").
 {¶ 22} As in Fair, the trial court here appointed standby counsel, and counsel aided defendant. See United States v. Cash (C.A.11, 1995), 47 F.3d 1083, 1088-1089 (observing that whether standby counsel was appointed and the extent to which counsel aided defendant is one of the factors to be considered in determining from the record if defendant's waiver of counsel can be deemed voluntary, knowing, and intelligent). Standby counsel gave defendant advice both before and during trial and moved for a Crim.R. 29 dismissal following the jury's guilty verdict. However, unlike Fair, the record does not indicate to what extent defendant was aware of his lack of legal knowledge and need to rely on the advice and assistance of his standby counsel. See Wiesner v. Abrams (E.D.N.Y., 1989), 726 F. Supp. 912, 919, affirmed (C.A.2, 1990), 909 F.2d 1473 (commenting that candid admission of defendant's shortcomings relative to experienced counsel impressively suggests defendant's waiver is knowing and intelligent). Cf. Fair ("[d]efendant was aware of his lack of knowledge of the law and openly admitted it * * *; he was also aware of his need to rely on the advice and assistance of his standby counsel").
 {¶ 23} Even so, as in Fair, the trial court informed defendant of several pitfalls of self-representation, including that standby counsel would not volunteer anything to defendant and would not advise defendant if defendant made even a serious mistake. In addition to advising defendant of his duty to abide by rules, the trial court, prior to closing arguments, inquired concerning the voluntariness of defendant's decision to represent himself. Specifically, the trial court inquired of defendant whether he was doing this of his own free will, and defendant replied that he was.
 {¶ 24} Despite the trial court's inquiry into the voluntariness of defendant's decision to represent himself, the trial court's questioning did not address whether defendant understood the significance and consequences of his decision. See Godinez v. Moran (1993), 509 U.S. 389,401, 113 S.Ct. 2680, fn. 12 ("[t]he purpose of the `knowing and voluntary' inquiry * * * is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced"). (Emphasis sic.)
 {¶ 25} "[T]he ultimate test for whether there has been a valid waiver of the right to counsel `is not the trial court's express advice, but rather the defendant's understanding.'" Cash at 1088, quoting United States v. Fant (C.A.11, 1989), 890 F.2d 408, 409, certiorari denied (1990), 494 U.S. 1038, 110 S.Ct. 1498. We acknowledge that "`courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we `do not presume acquiescence in the loss of fundamental rights[,]'" Johnson v. Zerbst (1938), 304 U.S. 458,464, 58 S.Ct. 1019. The trial court went to great lengths to advise defendant of the trial procedures and the assumption of responsibility arising from his decision to represent himself, and defendant clearly stated he wanted to represent himself. Nonetheless, the record is deficient in inquiry from the trial court that would allow us to conclude defendant understood the nature of the charges, the potential defenses, and the potential penalty he would suffer if he were convicted. As a result, we cannot determine defendant's waiver was made with the requisite understanding. Because we cannot ascertain that defendant's waiver was made "with his eyes open," Faretta at 835, we are compelled to sustain defendant's second assignment of error. See State v. Obermeyer,152 Ohio App.3d 360, 2003-Ohio-1741 (concluding the trial court's inquiry was insufficient where the court "did not discuss the nature of the charge, the statutory offense, the range of the allowable punishments, or any possible defenses available to Obermeyer").
 {¶ 26} Finally, we observe the record does not contain an indication the trial court had defendant execute a written waiver as required by Crim.R. 44(C). See Crim.R. 44(C) ("[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing"). See, also, Crim.R. 2(C) (" `serious offense' means any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months").
 {¶ 27} Having overruled defendant's first assignment of error, but having sustained his second assignment of error, we reverse the judgment of the trial court and remand for a new trial.
Judgment reversed and case remanded.
LAZARUS and BROWN, JJ., concur.