OPINION *Page 2 
{¶ 1} This is an appeal from juvenile-appellant's adjudication and disposition for delinquency by one count of assault in violation of R.C.2903.13(A) a felony of the fifth degree, one count of aggravated menacing, in violation of R.C. 2903.21 (A)(B) a felony of the fifth degree, and the imposition of a suspended Department of Youth Services Commitment on one count of robbery in violation of R.C. 2911.02(A)(3) a third degree felony.
 STATEMENT OF FACTS AND LAW {¶ 2} The facts in this matter include the history of two separate delinquency cases. The first delinquency case commenced before the trial court in January of 2006. During the course of this matter, the juvenile, whose date of birth is October 9, 1993, was twelve years of age.
 {¶ 3} On January 9, 2006, a complaint was filed in the Richland County Court of Common Pleas, Juvenile Division, Case Number 2006-DEL-00029, alleging that appellant was a delinquent child for delinquency by intimidation of a victim in a criminal case, and second degree felony robbery. On February 22, 2006, the intimidation charge was dismissed and appellant pleaded true to a reduced charge of robbery, in violation of R.C. 2911.02(A)(3) a third degree felony. Appellant's disposition was a six month commitment up to the age of twenty-one at the Ohio Department of Youth Services (herein after DYS). Appellant's DYS commitment was suspended, he was released into his mother's custody and he was placed on community control sanctions with probation.
 {¶ 4} On March 10, 2006, appellant was charged with a probation violation. On April 7, 2006, due to mother's inability to follow through with appellant's dispositional *Page 3 
orders, appellant was placed under the protective supervision of the Richland County Children Services Board.[1] On April 17, 2006, the trial court ordered appellant to continue on probation. On April 21, 2006, the trial court approved and adopted a case plan for the family which included a psychological evaluation of appellant and any recommended treatment.
 {¶ 5} On May 19, 2006, Children's Services moved for a modification of the protective supervision disposition. Specifically, Children's Services moved to place appellant in the temporary custody of his maternal grandparents. The agency's concerns included mother's failure to maintain educational goals, domestic violence in the home and mother's unwillingness to follow through with paperwork for appellant's commitment to the Ohio Psychiatric Hospital.
 {¶ 6} On June 21, 2006, a complaint was filed in the Richland County Court of Common Pleas, Juvenile Division, Case Number 2006-DEL-00707, alleging that appellant was a delinquent for having committed one count of assault in violation of R.C. 2903.13(A) and one count of aggravated menacing in violation of R.C. 2903.21(A)(B), a fifth degree felony. On that same date, the trial court appointed appellant a special advocate/ guardian ad litem.
 {¶ 7} On July 5, 2006, appellant was placed in the temporary custody of his maternal grandparents.
 {¶ 8} On July 26, 2006, appellant appeared without counsel for an adjudication hearing on the assault and aggravated menacing charges. At the hearing the trial court addressed appellant's appearance without the assistance of counsel and accepted *Page 4 
appellant's un-counseled plea to the charges. The colloquy between the trial court and appellant was as follows:
 {¶ 9} "Court: Alright, Kenneth, if you will stand please. Uh, you do have a right to have a lawyer represent you, and if you cannot afford one, one would be appointed at public expense. Do you understand that?
 {¶ 10} "Court: Do you wish to have a lawyer, or do you waive your right to a lawyer?
 {¶ 11} "Appellant: I don't want one.
 {¶ 12} "Court: Alright. The Court accepts your waiver of counsel as knowingly and voluntarily made. Um, there is Count One, Ag, uh Assault, which is a felony of the fifth degree, there is Count Two, Aggravated Menacing, Do you understand that?
 {¶ 13} "Appellant: Yep.
 {¶ 14} "Court: Do you admit or deny these charges. What are you planning on?
 {¶ 15} "Appellant: Admit.
 {¶ 16} "Court: Alright. Before you admit I have to explain to you that if you admit you would be giving up the following rights. You'd be giving up your right to remain silent. Do you understand that?
 {¶ 17} "Appellant: Yes.
 {¶ 18} "Court: You'd be giving up your right to uh present evidence on your own behalf as a defense to fight the charge. Do you understand that?
 {¶ 19} "Appellant: Yeah.
 {¶ 20} "Court: You'd be giving up your right to testify as a witness on you own behalf should you so choose. Do you understand that? *Page 5 
 {¶ 21} "Appellant: Yeah.
 {¶ 22} "Court: You would also be giving up your right to ask questions or to cross-examine witnesses. Do you understand that?
 {¶ 23} "Appellant: Yeah.
 {¶ 24} "Court: In other words, if you admit the Assault uh I'll take your word for it and there would be no trial. Do you understand that?
 {¶ 25} "Appellant: Yeah.
 {¶ 26} "Court: Now, the Assault charge is a felony of the fifth degree if committed by an adult. It carries with it a potential maximum penalty of being placed in the legal custody of the Ohio Department of Youth Services for an indeterminate period of time of six months to age twenty-one. Do you understand that?
 {¶ 27} "Appellant: Yeah.
 {¶ 28} "Court: * * * Alright. So the Count two, the Aggravated Menacing is also a felony, you could get another six months out of that. So if you plead to both of these, the maximum penalty that you could get would be a year or longer, up to the age twenty-one. Do you understand that?
 {¶ 29} "Appellant: Yeah.
 {¶ 30} "Court: * * * Do you wish to go to trial to fight the charge, or do you give up your rights?
 {¶ 31} "Appellant: I give them up.
 {¶ 32} "Court: Are you doing so voluntarily?
 {¶ 33} "Appellant: Yeah. *Page 6 
 {¶ 34} "Court: Alright. The Court approves the waiver of rights as knowingly and voluntarily made. What is your plea to Count One, felony Assault, admit or deny?
 {¶ 35} "Appellant: Admit.
 {¶ 36} "Court: How about Count Two, Aggravated Menacing?
 {¶ 37} "Appellant: I admit. * * *"
 {¶ 38} "Court: * * * Alright. So, young man, I am going to give you the opportunity between now and the time you come to sentencing to determine whether you should apologize to the court.
 {¶ 39} "Appellant: Fuck the Court."
 {¶ 40} Originally, the Court deferred sentencing to investigate possible treatment facility placements. After appellant's outburst, the court ordered the sentencing to occur in the afternoon following the plea.
 {¶ 41} In the afternoon, appellant appeared for the disposition without the assistance of counsel. Prior to disposition the State moved to voluntarily dismiss a recently filed un-adjudicated menacing complaint in which appellant was accused of assaulting another juvenile in detention. During the disposition, a conversation took place between the trial court and appellant. In the conversation it was indicated that appellant was engaging in violent behaviors in detention because he wanted the court to order a DYS commitment rather than a group home placement. (See Transcript of Dispositional Proceedings at page 4 and 5). Appellant further stated that he just didn't care anymore what happened to him.
 {¶ 42} The trial court then ordered the following disposition: In case number 2006-DEL-00707 on the felony assault charge the court ordered that appellant be *Page 7 
committed to the Department of Youth Services for a minimum of six months up to age twenty-one. On the felony aggravated menacing charge the court ordered appellant committed to the Department of Youth Services for a minimum of six months up to age twenty-one. The trial court ordered the sentences to run consecutively. The trial court then revoked the prior suspended commitment in Case Number 2006-DEL-00029. The trial court further ordered the sentence in 2006-DEL-00707 to run consecutively to the re-imposed disposition of six months up to age twenty-one (21) in Case Number 2006-DEL-00029. In total appellant was ordered to serve an aggregate minimum commitment of eighteen months up to age twenty-one at DYS.
 {¶ 43} Finally, the trial court ordered appellant to submit to a mental health assessment and requested that appellant be placed in the Marion Intensive Mental Health Unit "as soon as possible" unless DYS found appropriate reasons why he should not be placed in that mental health unit. The trial court went on to state "So that you clearly know * * * number one, we care about you * * * We want you to succeed."
 {¶ 44} It is from this adjudication and dispositional order that appellant now seeks to appeal setting forth the following assignments of error:
 {¶ 45} "I. THE TRIAL COURT VIOLATED KENNETH PUCKETT'S STATUTORY AND CONSTITUTIONAL RIGHTS WHEN IT FAILED TO HOLD A COMPETENCY HEARING AT ANY TIME PRIOR TO, OR DURING THE COURSE OF TRIAL, AS GUARANTEED BY THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, R.C. 2945.37(B), AND JUVENILE RULE 32. *Page 8 
 {¶ 46} "II. THE TRIAL COURT VIOLATED KENNETH PUCKETT'S RIGHT TO COUNSEL AND RIGHT TO DUE PROCESS UNDER THE FIFTH, SIXTH, ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.352, AND JUVENILE RULES 4, 29, AND 35.
 {¶ 47} "III. KENNETH PUCKETT'S ADMISSIONS WERE NOT KNOWING, VOLUNTARY, AND INTELLIGENT, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND JUVENILE RULE 29.
 {¶ 48} "IV. THE JUVENILE COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO APPOINT A GUARDIAN AD LITEM IN VIOLATION OF R.C. 2151.281(A) AND JUV.R. 4(B)."
 II {¶ 49} For purposes of judicial economy the Court will first address appellant's second assignment of error.
 {¶ 50} In the second assignment of error, appellant argues that the trial court failed to obtain a valid waiver of counsel at all stages of the proceedings and therefore, denied him his constitutional right to the effective assistance of counsel. We agree.
 {¶ 51} In re Gault (1967), 387 U.S. 1, 87 S.Ct. 148, 18 L.Ed.2d 527, the United States Supreme Court recognized that the due process clause of the Fourteenth Amendment requires that juvenile court delinquency hearings measure up to the essentials of due process and fair treatment. The Gault court held that due process requires notice of the right to counsel either retained or appointed. The Supreme Court *Page 9 
of Ohio adopted the principles of Gault through its decision in In reAgler (1969), 19 Ohio St .2d 70, 249 N.E.2d 808. In Agler, the Court held, "the thrust of Gault is that the disposition, possible and probable, of children involved in delinquency proceedings constitutionally warrants procedures found necessary to assure the essential fairness of trials or hearings with a substantial binding or coercive effect." Id. at 78. The right to counsel is an essential element of that fairness. Griffin v. Illinois (1956), 351 U.S. 12,76 S.Ct. 585, 100 L.Ed. 891.
 {¶ 52} In Ohio, the right to counsel is statutory as well as constitutional. R.C. Section 2151.352 and Juv.R. 4 and 29 recognize that the right to counsel does not apply solely to adults. Juvenile defendants are entitled to counsel "at all stages of the proceedings" against them. R.C. 2151.352; Juv.R. 4,
 {¶ 53} R.C. 2151.352 establishes the right to counsel in all juvenile proceedings and states in pertinent as follows: "A child * * * * is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152 of the Revised Code. If, as an indigent person, a party is unable to employ counsel, the party is entitled to have counsel provided for the person pursuant to Chapter 120 of the Revised Code * * *. If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person."
 {¶ 54} Juvenile Rule 4(A) governs assistance of counsel and states in pertinent part that: "(A) Every party shall have the right to be represented by counsel and every child * * * the right to appointed counsel if indigent. * * *. *Page 10 
 {¶ 55} Juvenile Rule 29(B) provides in pertinent part that: "At the beginning of the hearing, the court shall do all of the following: * * * "(3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel; * * * (4) Appoint counsel for any unrepresented party under Juv. R. 4(A) who does not waive the right to counsel; * * * "(5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent."
 {¶ 56} The only circumstance under which a juvenile defendant may appear without counsel is after the juvenile court has obtained a valid waiver of the juvenile's right to counsel. R.C. 2151.352; Juv.R. 29(B)(4); Juv.R.3. A defendant's waiver of the right to counsel must be voluntary, knowing, and intelligent. State v. Gibson (1976),45 Ohio St.2d 366, 345 N.E.2d 399, paragraph one of syllabus.
 {¶ 57} The determination of whether their has been an intelligent waiver of right to counsel must depend, in each case, upon the particular circumstances surrounding that case, including the background, experience and conduct of the accused. Johnson v.Zerbst (1938) 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 141. "A sketchy minimal inquiry touching upon only some of the above-numerated factors will not adequately establish an effective waiver of counsel." State v.McQueen (1997), 124 Ohio App. 3d 444, 447, 706 N.E. 2d 423. "Courts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel." State v. Dyer (1996), 117 Ohio App. 3d 92, 95,689 N.E.2d 1034. *Page 11 
 {¶ 58} In order to establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and relinquishes that right.Gibson Supra. The fact that an accused may tell the trial court that he is informed of his right to counsel and desires to waive his right does not automatically end the trial court's responsibility. Gibson, Supra. A judge must investigate as long and as thoroughly as the circumstances before him demand. Gibson Supra.
 {¶ 59} At a minimum, to be valid, a waiver of the right to counsel "must be made with an apprehension of the nature of the charges, the statutory offense included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the waiver. Juv.R.29(B)(5), See also, Gibson, supra, citing Von Moltke v. Gillies (1948), 332 U.S. 708, 722,68 S.Ct. 316 (Emphasis added), See also, State v Martin (2004),103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227. A court may also consider various other factors including the defendant's age, education, and legal experiences in determining that a waiver of counsel is made knowingly, voluntarily and intelligently. State v Doane (1990), 69 Ohio App.3d 638,647, 591 N.E.2d 735. When "a trial court fails to inform a [juvenile] of one of his or her critical constitutional rights[,] * * * that failure is per se prejudicial." In re Onion (1998), 128 Ohio App.3d 498, 503,715 N.E.2d 604. If an accused is not represented by counsel and has not completely and intelligently waived his Constitutional right, theSixth Amendment stands as a jurisdictional bar to a valid conviction and sentence. In re Gibson, 45 Ohio St 2d at 406. *Page 12 
 {¶ 60} In this case, the social history of appellant strongly indicates that this child should have been provided with the assistance of counsel or the presence of counsel to assist in his defense. The record established that appellant was twelve years of age and had severe behavior problems. His aggressive behaviors had led to incidents of domestic violence in his home and in detention. He had previously been adjudicated delinquent for the commission of a felony offense but it appears that he received the assistance of counsel in the prior matter. Appellant also had a history of involvement with children's services for the purpose of developing educational plans and providing mental health services. The trial court's post-adjudication comments indicate that the trial court understood that appellant needed to be involved in mental health services. The appellant himself stated that he no longer cared what happened to him and willingly waived counsel, admitted to the charges and exhibited unruly behavior in the court room to entice a DYS commitment. Clearly in this case, appellant's age, state of mind, emotional stability, mental capacity and prior criminal experience indicate, at the very least, that the strictest scrutiny should have been employed in determining whether appellant knowingly, voluntarily and intelligently waived his right to counsel.
 {¶ 61} In determining whether this twelve year old child should proceed without counsel the trial court made the following inquiry:
 {¶ 62} "Court: Do you wish to have a lawyer, or do you waive your right to a lawyer?
 {¶ 63} "Appellant: I don't want one. *Page 13 
 {¶ 64} "Court: Alright. The Court accepts your waiver of counsel as knowingly and voluntarily made. Um, there is Count One, Ag, uh Assault, which is a felony of the fifth degree, there is Count Two, Aggravated Menacing, Do you understand that?
 {¶ 65} "Appellant: Yep."
 {¶ 66} Upon a review we find that the trial court did not substantially comply with Juv.R.29(B)(5) for a valid waiver of counsel. The record reflects that the trial court failed to inform appellant of the nature of the charges against him and the substance of the complaints, the possible dispositions which could be imposed, his right to remain silent, his right to obtain counsel at any stage of the proceedings, and his right to cross-examine witnesses. Furthermore, the trial court did not adequately warn appellant of the dangers and disadvantages of self-representation.
 {¶ 67} The record establishes that several constitutional rights were reviewed after appellant waived his right to counsel but before the trial court accepted his delinquency pleas. However, this is too little too late and does not cure the initial deficiency in the waiver of counsel. Accordingly, we find that the trial court did not engage in a sufficient inquiry to establish that appellant knowingly, intelligently and voluntarily waived his right to counsel.
 {¶ 68} For these reasons, we hereby sustain appellant's second assignment of error. Accordingly, appellant's plea, delinquency finding and dispositional order, in Case Number 2006-DEL-00707 and the order revoking the suspended commitment to DYS in Case Number 2006-DEL-00029 are hereby vacated.[2] Accordingly, the case is hereby remanded to the trial court for proceedings consistent with this opinion. *Page 14 
 I, II, V {¶ 69} Given our decision on appellant's second assignment of error, appellant's remaining assignments of error are moot and we decline to address them. See App. R.12(A)(1)(c).
 By: Edwards, J. Hoffman, P.J. and Farmer, J. concur *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas, Juvenile Division, is vacated and the case is remanded to the trial court for further proceedings. Costs assessed to appellee.
[1] This disposition was made in the delinquency case.
[2] See Judgment Entry filed on August 1, 2006, in Case Numbers 2006-DEL-00707 and 2006-DEL-0029. *Page 1