[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3.
 {¶ 2} Following a jury trial, David Overstreet was convicted of kidnapping, in violation of R.C. 2905.01(A)(3), and of aggravated robbery, in violation of R.C. 2911.01(A)(1). The trial court sentenced Overstreet to ten years in prison on each offense and ordered the sentences to be served consecutively. Overstreet now appeals.
 {¶ 3} In his first assignment of error, Overstreet argues that the trial court erred by allowing him to represent himself at trial. A defendant in a criminal trial has a constitutional right of self-representation, and "he may proceed to defend himself without counsel when he voluntarily and intelligently elects to do so."[1] "In order to establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right."[2]
 {¶ 4} This court has held that a trial court errs when it allows a defendant "to waive his right to be represented by counsel without first making a thorough inquiry into whether the defendant understood the magnitude of the undertaking and the hazards inherent in self-representation."[3] This court explained that a trial court "should candidly and thoroughly discuss with the defendant `the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'"[4] "Whether the waiver is knowing and voluntary must be decided on a case-by-case basis."[5]
 {¶ 5} This record demonstrates that, before being permitted to withdraw, Overstreet's counsel stated that she had explained to Overstreet that he was facing charges of kidnapping and aggravated robbery, which were felonies of the first degree, and that Overstreet faced a potential twenty-year prison term if he were convicted. She noted that she had reviewed the evidence with him and that she had advised him on a number of pretrial motions, and on how she believed the motions would fare based upon her knowledge of the law and of the evidence. Overstreet's counsel had also informed him of possible defenses and trial strategy.
 {¶ 6} Overstreet told the court, "I would rather represent myself. I'll go pro se right now and represent myself." The trial court repeatedly warned Overstreet that it would not advise him to represent himself and questioned him about whether he was sure that he wanted to proceed without counsel. But Overstreet persisted in his demand for self-representation.
 {¶ 7} Overstreet demonstrated his familiarity with the court system when he asked the court "to put some years on the shelf and give me River City[, a local treatment program]. I need drug and alcohol treatment." When the court informed Overstreet that he was ineligible for the program because of the nature of the offenses, Overstreet responded, "It could be broke down to a lesser charge. I checked into River City. There is people over there with lesser — charges with rapes and robberies."
 {¶ 8} If a trial court denies a defendant the right of self-representation when that right is properly invoked, the denial is per se reversible error.[6] We note that Overstreet did not invoke his right to self-representation until the day that his trial was scheduled to begin. Because Overstreet's request was untimely, the trial court could have refused his request to represent himself.[7]
 {¶ 9} In this case, we cannot say that the trial court erred in allowing Overstreet to represent himself. "The issue * * * is not whether [the defendant] made a wise decision; rather it is whether he `fully understands and intelligently relinquishes' his right to counsel."[8]
The record in this case clearly demonstrates that, as did the defendant in Faretta v. California,[9] Overstreet "clearly and unquivocally declared to the trial judge that he wanted to represent himself and did not want counsel * * * [and that Overstreet] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will."[10] Because the record demonstrates that Overstreet knowingly, intelligently, and voluntarily waived his right to be represented by counsel, we overrule the first assignment of error.
 {¶ 10} In his second assignment of error, Overstreet argues that defense counsel had been ineffective because she had not filed a suggestion of incompetency and a plea of not guilty by reason of insanity. But "where there was absolutely no basis in the record to question the defendant's ability to understand the nature of the proceedings against him and to aid in his own defense, and where there was absolutely no basis to conclude that the defendant suffered from any mental illness that would have proved him to be insane," there was no "indicia of a substantial breach of a professional duty owed to the defendant [by defense counsel] and resulting prejudice."[11] We overrule the second assignment of error.
 {¶ 11} In his third assignment of error, Overstreet contends that the trial court erred by failing to grant his motion to suppress identification testimony. When a witness has been confronted with a suspect before trial, due process requires a court to suppress the identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances.[12] In this case, the victim's mother retrieved a photograph of Overstreet from the Internet and showed it to the victim. The victim and his mother brought the photograph to the police. The police later put together a photographic array, including a photograph of Overstreet, and showed it to the victim. The victim selected Overstreet from the array without hesitation. Clearly, the actions of the police were not suggestive of Overstreet's guilt because the victim and his mother had brought a photograph of Overstreet to the police before the police photographic array was assembled. The third assignment of error is overruled.
 {¶ 12} In his fourth and fifth assignments of error, Overstreet argues that his convictions were contrary to the weight and sufficiency of the evidence. To reverse on a claim of insufficient evidence, this court must conclude, after viewing the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[13]
With respect to the sufficiency of the evidence, questions regarding the credibility of witnesses are left to the trier of fact.[14] To reverse on the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[15]
 {¶ 13} R.C. 2905.01(A)(3) provides that "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for [the purpose] to terrorize, or to inflict serious physical harm on the victim or another." R.C. 2911.01(A)(1) provides that "[n]o person, in attempting or committing a theft offense * * *, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 14} The state presented evidence in this case that the victim was driving Overstreet and Jay Sain to the Northside section of Cincinnati as they had requested. At some point, Sain, who was in the backseat, grabbed the victim from behind and restrained him in a chokehold. Overstreet leaned over from the front passenger seat and held what the victim believed to be a knife to the victim's throat. Sain ordered the victim to stop the car. The two men took the victim out of the car and began punching him. The men threw the victim into the trunk of the victim's car, closed the trunk, and then drove the car for a few hours. While the victim was trapped in the trunk, he overheard Sain and Overstreet discussing their plans to dispose of the car and the victim in the Ohio River.
 {¶ 15} The victim tried to pry the trunk open with a tire iron, but was unsuccessful. The victim disconnected the car's taillights in the hope that a police officer would pull the car over for a traffic infraction. At one point, Overstreet and Sain stopped the car and began to beat the victim. They ripped the victim's shirt from his body, bound his hands and feet, and gagged him. The victim had a black eye and a bloody nose, and was having trouble breathing.
 {¶ 16} Sain and Overstreet got back into the car and drove for another hour or so. It was not until the car's engine malfunctioned and the car stopped on the side of the highway that the two got out and left the car with the victim still trapped inside the trunk. The victim waited until he felt the two men had been gone a sufficient time, and then he kicked out the back seat of the car and escaped from the trunk.
 {¶ 17} The state presented evidence of Sain's palmprint in the vehicle, as well as ripped and bloodied pieces of the victim's tee shirt that had been recovered from the trunk of the car. The state also presented photographs of the pry marks inside the trunk and the kicked-out back seat, which corroborated the victim's account of his escape attempts. The state further presented the testimony of a witness who saw the victim leave a gathering with Sain and Overstreet, and then saw the battered victim hours later.
 {¶ 18} Based on our review of the record, we hold that there was sufficient evidence to convict Overstreet of kidnapping and aggravated robbery. Also, with respect to the manifest weight of the evidence, we conclude that, in resolving the conflicts in the evidence, the jury did not lose its way and create such a manifest miscarriage of justice that a new trial is required. We overrule the fourth and fifth assignments of error.
 {¶ 19} In his sixth assignment of error, Overstreet argues that the trial court erred by imposing a sentence that was contrary to law. The court sentenced Overstreet to maximum, consecutive prison terms. Specifically, Overstreet contends that "[t]he sentence was excessive, did not comply with the sentencing guidelines, and was based on factors outside the guidelines." We disagree. Our review of the record indicates that the trial court made the statutorily required findings pursuant to both R.C. 2929.14(C) and R.C. 2929.14(E)(4) and verbalized in great detail its reasons supporting those findings during the lengthy sentencing hearing.[16] Therefore, we overrule the sixth assignment of error and affirm the judgment of the trial court.
 {¶ 20} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Hildebrandt and Winkler, JJ.
[1] Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525;State v. Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399.
[2] Gibson, supra, at paragraph two of the syllabus; State v. Taylor,98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72.
[3] See State v. Obermeyer, 152 Ohio App.3d 360, 2003-Ohio-1741,787 N.E.2d 729.
[4] Obermeyer, supra, citing State v. Vordenberge, 148 Ohio App.3d 488,2002-Ohio-1612, 774 N.E.2d 278.
[5] Vordenberge, supra, at 493, 2002-Ohio-1612, 774 N.E.2d 278, citingState v. Watson (1998), 132 Ohio App.3d 57, 64, 724 N.E.2d 469.
[6] State v. Vrabel, 99 Ohio St.3d 184, 2003-Ohio-3193,790 N.E.2d 303.
[7] See id. (trial court did not abuse its discretion and properly refused defendant's request to represent himself after voir dire had been completed and on the first day that evidence was to be presented); Statev. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81 (the defendant's request to represent himself was untimely since it was made only three days before the trial was to begin).
[8] Taylor, supra.
[9] Faretta, supra.
[10] Id. at 835-836, 95 S.Ct. 2525.
[11] State v. Hedgecoth, 1st Dist. No. C-020480, 2003-Ohio-3385; see, also, State v. Tibbetts, 92 Ohio St.3d 146, 2001-Ohio-132,749 N.E.2d 226.
[12] See State v. Waddy (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819, citing Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375.
[13] State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[14] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
[15] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[16] See State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165,793 N.E.2d 473; State v. Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110,715 N.E.2d 131; State v. Nyel, 1st Dist. No. C-020640, 2003-Ohio-4961.